WALTER W. HIGGINS, Petitioner, v. W. C. PARKER, Acting Warden,
Missouri State Penitentiary.—No. 39705.—191 S. W. (2d) 668.

Court en Banc, December 3, 1945.

Rehearing Denied, January 8, 1946.

*Scott Peters* for petitioner.

*J. E. Taylor*, Attorney General, and *Gordon Weir*, Assistant At-
torney General, for respondent.

ELLISON, J.—Habeas corpus. Twelve years ago the pe-
titioner was convicted in the circuit court of Buchanan county of
robbery in the first degree under Sec. 4450,[1] and also as a second of-
fender under the habitual criminal statute, Sec. 4854. Accordingly,
his punishment was assessed by the jury at the maximum, life im-
prisonment in the state penitentiary, as fixed by Sec. 4453.

He prosecutes this writ on the theory that the trial pro-
ceedings were at least voidable and subject to attack by this writ,
because Bernard Rodin, chief counsel representing him therein, was
a layman and had not been admitted to the bar of this or any other
state. This, he asserts, placed him in the same situation as if he had
been denied counsel altogether in violation of his constitutional rights.[2]
And he says he did not waive the lack of counsel, because he did not
know Rodin was not a duly licensed attorney, and did not find it out
until a year later.

It is undisputed that Rodin had never been admitted to the bar,
but was masquerading as a lawyer on a forged certificate. Further-
more, petitioner testified that Rodin botched up the case; unwisely

---

[1] All references to our statutes are to R. S. Mo., 1939, unless otherwise
indicated.

[2] Sec. 18, Art. I, Const. Mo., 1945, Sec. 30, Art. II, Const. 1875; 6th and
14th Amendments, Const. U. S.

advised him to make no testimonial admissions (even of true or obvious facts); wrongly advised him about the criminal law; provoked the trial court into fining him (Rodin) $50 for contempt, with execution suspended; and finally failed to file a motion for new trial, and perfect an appeal, though instructed so to do. The trial judge, his successor in office, and an assistant prosecuting attorney who represented the State in the criminal case, all signed recommendations for a parole based on the disclosure that Rodin was not a lawyer, and because they thought petitioner had been unskillfully represented.

On the facts thus far sketched we may concede that the petitioner's position would be well taken. But there are other facts. He further testified before this court that Rodin had come to Buchanan county as a representative of the Triple A automobile association and that he had known him three or four months. Rodin had purchased an automobile from petitioner and still owed $350 on the purchase price. He agreed to defend petitioner in the criminal case, and to treat the discharge of the $350 debt as his attorney fee. But shortly before the trial he told petitioner he wanted to employ an assistant counsel to help empanel the jury, because he was not well acquainted in St. Joseph; and he asked petitioner for $50 more for that purpose. Petitioner was agreeable to having another lawyer but refused to put up the additional $50. Rodin thereupon did employ Mr. Alan S. Bullock, a duly licensed attorney of the city, who assisted in the trial. But petitioner testified before this court that after the trial had proceeded for a while Rodin and Bullock seemed to disagree about the handling of the case, and after a court recess following the testimony of two State's witnesses on the first day of the trial, Bullock never appeared again.

Mr. Bullock, the "assistant" counsel, just returning as a Lieutenant in the U. S. Navy after three years foreign service, also testified before this court, and corroborated the petitioner's testimony this far. He said he assisted in the trial of the case, but never was paid anything, and really wasn't hired but sat in more or less as a favor to Rodin; that he disagreed with Rodin about his method of conducting the case; and that he was trying to recall "when I withdrew during the trial" but couldn't remember. He declared one thing they disagreed about wholeheartedly, was that he thought petitioner shouldn't take the stand at all. But it was unnecessary to determine that question finally until near the end of the trial, since petitioner was the last of the twelve witnesses to testify. Bullock believed he remembered that Rodin was fined for contempt while he was arguing the case to the jury—after he (Bullock) had withdrawn.

A certified copy of the bill of exceptions in the criminal trial was offered in evidence at the hearing of this cause by this court. It shows on the first day of the trial that Bernard Rodin and Mr. Bullock

appeared with the petitioner as his attorneys; that his plea of guilty entered over a month earlier was withdrawn; an amended information was filed; formal arraignment was waived, and a plea of not guilty entered; the jury was impaneled, and part of the evidence heard. On the second day of court the trial apparently ran all day (past the noon recess, anyway), the jury were instructed, arguments made and the verdict returned. The petitioner was granted allocution and judgment and sentence were pronounced three weeks later.

The bill of exceptions shows seven witnesses testified for the State and five for the defense (counting the petitioner). Mr. Bullock made all the objections for the defense on the direct examination of the State's two main witnesses, Buzard, who was robbed, and Faulkner, petitioner's accomplice, who had turned State's evidence; and he also cross-examined these witnesses.  He further made objections during the direct examination of the State's witnesses Stroud and Swope. And at the close of all the evidence he renewed an objection made by the defense near the beginning of the trial, and moved for the discharge of the jury. The objection complained of a statement made by an assistant prosecuting attorney disclosing to the jury that petitioner had previously pled guilty and then withdrawn his plea. Bullock testified he couldn't remember making that objection, but would not say he didn't. The bill shows arguments were made to the jury but not who made them. However it is pretty clear that Bullock did not argue, for he testified that during the argument he was in the courtroom but not within the bar. The record nowhere shows that he withdrew as counsel for defense; but he said his recollection was that he so announced to Judge Gaddy, the circuit judge.

Judge Gaddy testified by deposition that Bullock sat at the counsel table all the time during the trial, but that Rodin took the laboring oar. He didn't recall that Bullock examined any witnesses, in which he obviously was mistaken, as shown by the bill of exceptions. He couldn't remember whether Bullock made an argument to the jury. Further, he stated that he would have given the petitioner a new trial if he had learned in time that Rodin was not a lawyer. In fact he suspicioned he had never practiced before and asked him, whereupon Rodin produced the forged certificate. The $50 fine for contempt was imposed for conduct disrespectful to the court and others. The recollection of Mr. Bielby, one of the two assistant prosecuting attorneys who represented the State in the criminal trial, was about like that of Judge Gaddy. He thought he remembered that Bullock did withdraw from the case.

It may be freely granted, as held in several cases,[3] that the word

---

[3]Harkins v. Murphy, 51 Tex. Civ. App. 568, 112 S. W. 136, 138; Baker v. State, 9 Okla. Crim. Rep. 62, 130 Pac. 820; Achtien v. Dowd, 117 Fed. (2d) 989, 992(1).

"counsel", appearing in Sec. 22, Art. II, Const. Mo. 1875 and Sec. 18, Art. I, Const. Mo. 1945, and the 6th Amendment, Const. U. S., all of which guarantee the accused in a criminal case the right to the assistance of counsel, means a duly licensed lawyer, and not a mere attorney in fact or layman. But the question here is whether the criminal prosecution in which petitioner was convicted is now subject to attack by habeas corpus merely because *one* of the two counsel who represented him at the trial was not a licensed lawyer, although the other one was. In this connection and despite Mr. Bullock's vague recollection to the contrary, we find and hold he did not withdraw as counsel. The bill of exceptions shows he took an active part in the petitioner's defense from the beginning to the end of the reception of evidence and was present during the argument to the jury, but did not make an argument. His professional ability and fidelity are unquestioned.

As is pointed out again in Hawk v. Olson, 66 S. Ct. 116, decided by the U. S. Supreme Court on November 13, 1945, the right of the Federal court to inquire at large by habeas corpus into the constitutionality of the restraint of an accused, is derived from a Federal statute passed in 1867, 28 U. S. C. A., sec. 453 (4th clause). Under that statute a felony conviction may be attacked collaterally in the Federal courts, where the attack is based on an alleged violation of the constitutional right of the accused.

So we go directly to the Federal decisions which appear to be most nearly in point on the facts.[4] In the Terrell case, just cited, the opinion recites that the petition "indicates that two attorneys were appointed for the appellant, one of whom he says 'was a hand picked man.' " And petitioner refused in open court to accept him and asked for another lawyer. The 8th Circuit Court of Appeals held that the petition on its face was without merit.

In the Coates case two competent lawyers were appointed by the court to represent the accused. One of them was unable to attend the trial, but his partner took his place. The other one of the two appointed counsel withdrew near the close of the trial because of illness. But his father, who had not been appointed by the court, but nevertheless had sat at the counsel table during the trial, made an argument. Both the District Court and the 5th Circuit Court of Appeals held that the writ of habeas corpus should be denied on these facts.

In the Pierce case the accused was represented by two attorneys, one of whom was committed to an insane asylum a year

---

[4]Terrell v. Biddle, Atty. Gen., 139 Fed. (2d) 32; Coates v. Lawrence, Warden, 131 Fed. (2d) 110; Same case, 46 Fed. Supp. 414, 421(12); Pierce v. Hudspeth, Warden, 126 Fed. (2d) 337; Achtien v. Dowd, Warden, 117 Fed. (2d) 989, 992(3, 4).

after the trial. The other attorney was competent. Accused became dissatisfied with one or both of his lawyers, particularly because of their refusal to challenge a juror and to recall a witness for further cross-examination. The accused tried to employ other counsel during the noon hour, but could not raise funds. But neither his testimony nor the record disclosed that he informed the trial court of his dissatisfaction while the trial was in progress. Both attorneys had been retained by the petitioner himself. Here again the writ of habeas corpus was denied.

The petitioner in the instant case also contends that his conviction was violative of his constitutional rights because of the incompetence of his counsel Rodin. This, of course, ignores the fact already discussed that he had another duly licensed lawyer, Lt. Bullock, who participated in his defense throughout. There are Federal decisions which hold that in some instances the incompetence of counsel may deny accused his constitutional right to a fair trial.[5] But these decisions say the facts must be strong to warrant the overturning of a criminal judgment on that ground. The facts here certainly do not warrant it.

For the reasons stated, the petitioner is remanded to the custody of the Acting Warden, W. C. Parker. All concur.

---

[5]Dorsey v. Gill, 148 Fed. (2d) 857, 876(4, 9); Diggs v. Welch, 148 Fed. (2d) 667, 668-9(2-4); Tompsett v. State, 146 Fed. (2d) 95, 98(2).