[L.A. No. 30538. July 28, 1976.]

GORDON W. FARNHAM, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Gerald E. Utti and Richard J. Curran for Petitioner.

Herbert M. Rosenthal and Arthur L. Margolis for Respondent.

## Opinion

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law for two years upon conditions of probation, including actual suspension for six months.

Petitioner was admitted to practice law in California in 1961. He was previously disciplined here for nonpayment of dues[1] and for abandonment of clients' interests.[2] In the current proceeding, petitioner was charged with violation of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068), the unauthorized practice of law (Bus. & Prof. Code, § 6126) and the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106).

The local administrative committee found that petitioner abandoned the interests of his clients, Margaret Cox and Howard Graham, and held himself out as entitled to practice law while he was actually suspended from practice. Based on these findings as well as petitioner's prior record of discipline, the committee recommended that he be suspended from the practice of law for one year on conditions of probation, including actual suspension for six months. Upon review, the board substantially adopted the committee's findings but recommended that petitioner be suspended two years upon conditions of probation including actual suspension for six months.

Petitioner challenges the State Bar's recommendation of suspension on the grounds that the disciplinary proceedings were violative of the Rules of Procedure of the State Bar of California in that (1) the State Bar examiner was allowed to amend the notice to show cause and (2) to remark as to petitioner's failure to respond to discovery procedures, and further, (3) that a member of the disciplinary board was permitted to sit on the panel of the local administrative committee which set forth the initial findings of fact. These contentions are without merit.

■ The record indicates that the original notice to show cause was issued on March 12, 1974. The examiner's "Request to Amend Notice to

---

[1]Petitioner was suspended from the practice of law on December 7, 1967 (Bar Misc. 3150). He was subsequently reinstated on May 10, 1968.

[2]Petitioner was again suspended from the practice of law for a three-month period beginning May 20 and ending August 20, 1972, for his conduct in four separate matters involving abandonment of clients' interests (Bar Misc. 3470).

Show Cause," dated July 3, 1974, did not alter the original notice except to add a count charging petitioner with the unauthorized practice of law (Bus. & Prof. Code, § 6126). Rule 30 of the Rules of Procedure of the State Bar of California specifically provides, in part, that "The committee, at any time prior to the conclusion of the hearing . . . may allow or require amendments to the notice to show cause . . . ." As petitioner received a copy of the amendment prior to the hearing but made no response, and at the commencement of the hearing announced, without qualification, that he was ready to proceed, he cannot now complain that the notice was improperly amended. (*Crooks* v. *State Bar* (1970) 3 Cal.3d 346, 357 [90 Cal.Rptr. 600, 475 P.2d 872].)

■ Similarly, petitioner has not demonstrated any specific prejudice arising from the State Bar examiner's statements before the committee regarding his failure to file an answer to the notices to show cause or to respond to interrogatories and requests for admissions.[3] ■ ■■■ The record reveals that the examiner's remarks were simply neutral comments made at the outset of the hearing to explain that petitioner had declined to respond to the discovery procedures.[4] The fact that petitioner assumes prejudice from these statements is not sufficient to sustain his contention as no showing of actual prejudice has been made. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 449 [113 Cal.Rptr. 602, 521 P.2d 858].)

■ Petitioner has also failed to demonstrate that the disciplinary proceedings were prejudicial because John Banks continued to serve as

---

[3]With regard to petitioner's failure to respond to the various discovery procedures, the State Bar examiner stated: ". . . I would like to make an opening statement, and that simply is to reiterate that the Notice to Show Cause, the request to amend Notice to Show Cause, were prepared at my office and delivered to [petitioner] together with certain requests for admissions and interrogatories which are part of the State Bar file. That I have never received any communication directly from [petitioner], either by telephone, in person, or in writing. No answers have been filed or received by me, to my knowledge."

[4]There is also no merit to petitioner's assertion that the interrogatories and requests for admissions were pursued in violation of rules 14.8 and 14.9 of the Rules of Procedure of the State Bar because a request for informal discovery had not previously been made. The informal records of the State Bar reveal that discovery was pursued only after petitioner failed to respond to the examiner's request for an informal conference. If petitioner chose not to respond to the interrogatories and requests for admissions because he believed that these discovery procedures were improper, he should have voiced his objections before the committee, and if still dissatisfied, requested review of the committee's decision before the discovery review board and this court, pursuant to the provisions of rule 14.4 of the Rules of Procedure of the State Bar. As petitioner neglected to pursue these procedural options, he may not now protest. (See *Barreiro* v. *State Bar* (1970) 2 Cal.3d 912, 925 [88 Cal.Rptr. 192, 471 P.2d 992].)

the presiding officer of the local administrative committee which heard petitioner's case, although he had already accepted an appointment to the panel of the disciplinary board which eventually reviewed the proceeding. As petitioner concedes, Banks did disqualify himself when petitioner's proceeding came before the reviewing board. Petitioner cannot now challenge Banks' position as the sole member of the local administrative committee. Rule 35 of the Rules of Procedure of the State Bar requires that a request for a three-member committee be filed within fifteen days of the notice to show cause, and petitioner, at no time, made such request. Moreover, petitioner cannot contend that had he been apprised of Banks' appointment to the disciplinary board prior to the committee's review on January 10, 1975, he would have requested that Banks be removed for cause. Rule 15 of the Rules of Procedure of the State Bar specifically provides that hearing officers may be challenged only on those grounds specified in section 170 of the Code of Civil Procedure and Banks does not fall within the purview of those categories which include personal interest, financial interest, relationship and former counsel.

Petitioner additionally maintains that the evidence was insufficient to establish that he failed to discharge his duties as an attorney or that he abandoned the interests of Margaret Cox or Howard Graham. Contrary to petitioner's assertion, however, there is substantial evidence to support the committee's findings.

*The Cox Matter*

In September 1972 Margaret Cox consulted petitioner concerning the possibility for filing suit to secure an increase in the child support payments being made by her ex-husband pursuant to a Pennsylvania divorce decree. After learning the circumstances of the case, petitioner assured Mrs. Cox that the work she requested would be done "in very good fashion."

During the next three months, petitioner met with Mrs. Cox for several lengthy sessions which she testified "accomplished very little." Although Mrs. Cox never received a bill for petitioner's services nor paid him for his work, she did give him a check for $46, made out to the clerk of the court, to file her case. On one occasion, petitioner asked Mrs. Cox to come to his office to sign verification pages for the documents he claimed to have filed on her behalf. Mrs. Cox, however, never saw these documents. Thus, when the $46 check she had given petitioner was not

cashed, she called the clerk of the court and was informed that her case had never been filed. When Mrs. Cox confronted petitioner with this information, he suggested that perhaps she had called the wrong court.

*The Graham Matter*

In December 1971 Howard Graham consulted the Legal Aid Warranty Fund in order to secure counsel to represent him in a federal suit. Petitioner first encountered Graham at the fund offices where Graham had gone to complain that he was unable to contact the attorney who had originally been assigned his case. After discussing the facts of the case and taking Graham's file to review, the two met again on March 20, 1972, and petitioner informed Graham that he would handle the case and would have a complaint ready to be filed by June 15, 1972. Petitioner asked Graham to sign a retainer agreement and on the bottom of the form signed "accepted by Gordon Farnham." Pursuant to this agreement, Graham gave petitioner a check for $200, payable to petitioner's law firm. Graham subsequently gave petitioner three payments, each for $100.

Between March 1972 and June 1972 petitioner arranged approximately three appointments with Graham which he failed to keep. When Graham was finally able to contact him, petitioner stated that he had prepared a 14-page draft of the complaint and would have the case ready to be filed on June 15, 1972, as planned. Petitioner did not contact Graham prior to June 15, however, and when Graham was finally able to reach him, petitioner stated that the complaint would not be ready until October 1972. Graham next spoke to petitioner in late October 1972 at which time petitioner showed him a three-page document which Graham described as "mainly the preamble to filing my case listing the defendants." Petitioner, however, stated that he would have the complaint completed in three weeks. Graham did not hear from petitioner again for approximately four months and was unable to reach him. Therefore, in February 1973 he went to petitioner's office. When petitioner arrived he told Graham that his secretary was typing the final two pages of the complaint and that it would unequivocally be ready to be filed on either February 16 or 20, 1973. The case, however, was never filed.

Petitioner maintains that he did not feel responsible for the Graham matter as he was merely an employee of the Legal Aid Warranty Fund and had never told Graham he was going to try the case,

although he had worked on the complaint. Petitioner contends that there was no evidence that he even formed an attorney-client relationship with either Howard Graham or Margaret Cox, and therefore, he neither abandoned their interests nor violated the terms of his suspension by entering into the unauthorized practice of law.

There is no question that petitioner formed an attorney-client relationship with both Margaret Cox and Howard Graham. No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. It is the fact of the relationship which is important. (*Arden* v. *State Bar* (1959) 52 Cal.2d 310, 315 [341 P.2d 6]; *Copren* v. *State Bar* (1944) 25 Cal.2d 129, 130-136 [152 P.2d 729].) Thus, although Margaret Cox never gave him an actual payment for his legal services, at their first meeting, petitioner told her he would handle her case "in very good fashion" and accepted a check for $46 to file suit. Moreover, petitioner specifically told Howard Graham that he would accept his case and had Graham sign a firm retainer agreement, on the bottom of which he signed "accepted by Gordon Farnham."

■ It is also unquestionable that during his term of actual suspension, from May 20 until August 20, 1972, petitioner's activities with respect to the Graham case constituted the unauthorized practice of law. Such practice includes the mere holding out by a layman or a suspended attorney that he is practicing or is entitled to practice law. (*In re Cadwell* (1975) 15 Cal.3d 762, 771 [125 Cal.Rptr. 889, 543 P.2d 257]; Bus. & Prof. Code, §§ 6125, 6126.) Petitioner specifically told Graham that he would accept his case and have a complaint ready to be filed on June 15, 1972. Petitioner then met with Graham in June 1972 and told him that the complaint would be filed on June 15, as planned. Petitioner did not, however, inform Graham that he was then under suspension from the practice of law. While petitioner did not sign any legal documents or make a court appearance on Graham's behalf, in a larger sense, the practice of law includes legal advice and counsel and the mere preparation of legal instruments. (*Crawford* v. *State Bar* (1960) 54 Cal.2d 659, 667-668 [7 Cal.Rptr. 746, 355 P.2d 490].)

■ Petitioner's actions in both the Cox and Graham matters evidence a serious pattern of misconduct whereby he wilfully deceived his clients, avoided their efforts to communicate with him and eventually abandoned their causes. (*Lavin* v. *State Bar* (1975) 14 Cal.3d 581, 585 [121 Cal.Rptr. 729, 535 P.2d 1185].) In light of petitioner's prior record of discipline as well as his lack of insight into the impropriety of his actions, the recommended discipline is appropriate.

Accordingly, it is ordered that petitioner be suspended from the practice of law for two years on conditions of probation, including actual suspension for the first six· months and compliance with those other conditions of probation recommended by the disciplinary board, except that in lieu of requiring petitioner to certify in his first quarterly report to the State Bar that he has read the State Bar Act and Rules of Professional Conduct, we further order that prior to the end of petitioner's actual period of suspension or within one year of imposition of such period of suspension, he pass the Professional Responsibility Examination. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) It is also ordered that petitioner comply with rule 955 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days respectively after the effective date of this order. This order is effective 30 days after the filing of this opinion.