[Crim. No. 20630. Apr. 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS PEREZ, Defendant and Appellant.

## COUNSEL

Ernest Borunda, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jeffrey A. Joseph and Gary W. Schons, Deputy Attorneys General, for Plaintiff and Respondent.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Beardsley, Hufstedler & Kemble, Seth M. Hufstedler, Dennis M. Perluss, Glendalee Garfield, Terence W. Roberts, JoEllen L. Mitchell, Thomas Jed Scully, Gary T. Wienerman, Jane Wolf Eldridge, Arnold I. Siegel, George D. Crook and John J. Cleary as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**TOBRINER, Acting C. J.**—Defendant appeals from a conviction of second degree burglary (Pen. Code, § 459) following a jury trial in which Jack Loo, a certified law student acting under the supervision of a deputy public defender, appeared on defendant's behalf. The student's appearance was pursuant to the Rules Governing the Practical Training of Law Students promulgated by the State Bar of California on January 15, 1969 (hereafter cited as Rules).

Defendant argues that Loo's participation in the trial abridged his constitutional right to the assistance of counsel.[1] Because the Rules had

---

[1] The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." In parallel language,

never been submitted to this court for approval, defendant further argues that Loo's appearance constituted the unauthorized practice of law in violation of Business and Professions Code section 6126. Finally, defendant asserts that he did not knowingly consent to representation by a law student and that the police failed to retain potentially exculpatory evidence.

The Rules, as we shall explain, were carefully drafted with a view to assuring that defendants would receive competent legal assistance. The law student must have completed at least three semesters of legal education or equivalent, and be certified as fit to participate in the program by the dean of his school; in criminal cases he appears in court only under the immediate supervision of an experienced attorney, who assumes personal professional responsibility for the student's performance. When, as in the case at bar, a defendant receives competent representation pursuant to a program carefully formulated to assure such competency of representation, we can find no abridgment of the defendant's constitutional right to the assistance of counsel.

Defendant's remaining contentions, we shall explain, also lack merit. Thus the State Bar's failure to submit the Rules to this court does not affect the present appeal; Loo, acting in good faith pursuant to rules formally promulgated by the State Bar, rendered a competent performance; as a result defendant incurred no prejudice which would justify the reversal of the conviction. Finally, the record on appeal fails to support defendant's claim that he did not knowingly consent to Loo's appearance or that the police improperly failed to preserve evidence.

1. *Proceedings in the courts below.*

Following defendant's arrest for burglary, the trial court appointed the public defender as defendant's counsel. Defendant *consented in writing* to representation by Jack Loo, a certified law student, actually at this time a law school graduate awaiting the result of the bar examination, acting under the supervision of Edward Zinter, a deputy public defender. At trial Loo conducted the examination of witnesses and presented the argument to the jury. Zinter, who was present throughout the trial, interposed objections to evidence, approved jury instructions and verdict forms, participated in conferences with the court and prosecution counsel, and in other ways actively participated in the defense. Defendant

article I, section 15 of the California Constitution states that "The defendant in a criminal cause has the right . . . to have the assistance of counsel for the defendant's defense."

raises no question as to the competency of the defense; indeed at the close of trial the court stated in front of the jury that "Mr. Loo did what I consider for a law student an outstanding job . . . a better job than some I've seen with . . . people who are full-fledged lawyers."[2]

The evidence presented at trial clearly supports the conviction. Calexico police officers testified that they heard the sound of glass breaking, pulled up in front of Durazo's Men's Store, and saw that the glass door was shattered. They then noticed defendant walking away rapidly carrying paper bags. When they detained defendant, they observed that the bags contained new merchandise with price tags from Durazo's; they noted also that defendant had scratches and glass particles on his hands, arms, and the soles of his shoes.

Defendant denied committing the burglary, and claimed he discovered the bags on the sidewalk and picked them up only as the officers arrived. The defense further argued that the police failed to preserve the glass particles or to obtain fingerprint evidence of the crime.

The jury found defendant guilty of second degree burglary. On appeal, defendant raised two contentions: (1) that the police failure to preserve the glass particles denied him due process, and (2) that he did not knowingly waive his right to counsel or consent to be represented by a law student. The Court of Appeal, however, inquired further into the representation of defendant by a certified law student, and concluded that such representation abridged defendant's right to assistance of counsel and constituted the unauthorized practice of law. We granted a hearing to consider those issues.

[2]The California Public Defender Association, as amicus curiae, points out that Loo and Zinter failed to object to prosecution evidence that defendant, after having been advised of his right to remain silent, exercised that right and offered no explanation of his conduct to the arresting officers. Amicus argues that such failure constitutes incompetency of counsel. Defendant's appointed counsel on appeal has not raised or endorsed this argument, and in fact has expressly acknowledged the competency of the representation afforded defendant.

We note that at trial defendant testified expressly that he told the officers that he did not own the paper bags containing the stolen property. Although *Doyle* v. *Ohio* (1976) 426 U.S. 610 [49 L.Ed.2d 91, 96 S.Ct. 2440], held evidence of a defendant's silence was generally inadmissible, it recognized an exception when the evidence was offered to impeach testimony that the defendant offered an exculpatory explanation to the police at the time of his arrest. (See 426 U.S. at pp. 619, 620, fn. 11 [49 L.Ed.2d at p. 98]) Arguably, in view of defendant's testimony the prosecution evidence was admissible under that exception. In any event, since competent counsel might reasonably differ respecting the admissibility of such evidence or the desirability of objecting to its admission, the failure of Loo and Zinter to object does not demonstrate that defendant received incompetent representation.

2. ■ *Participation of a certified law student under the Rules does not abridge a defendant's right to competent assistance of counsel.*

The State Bar drafted the Rules with special care to the end that defendants represented by attorneys and certified students pursuant to those Rules would receive competent assistance. (See Ann. Rep. of Bd. of Governors (1969) 44 State Bar J. 616, 631.) The law student must have completed three semesters or equivalent of legal education. (Rule III, part B.) The dean of the law school or the judge or attorney under whom the student is studying must certify to his competence. (Rule IV.) The student may appear on behalf of a client in a trial only to the extent approved by the court. (Rule VI.) Finally, the client must expressly consent in writing to the student's appearance, which consent must be filed with the court. (Rule VI.)

Of particular importance in the present appeal, the entire process of student participation, from initial client interview through trial, is actively supervised by an experienced attorney who incurs personal responsibility for the student's performance. Rule VI provides that a certified student may appear in court "only with the approval [and] under the direct and immediate supervision and in the personal presence of the supervising lawyer." That lawyer must be an active member of the State Bar of California who has "actively practiced law in California or elsewhere as a full time occupation for at least two years" (Rule V); the supervising attorney assumes "personal professional responsibility for any work undertaken by the student while under his supervision" (Rule V). The defendant, in other words, is not merely represented by a student who has not been admitted to the bar; he is represented by an experienced member of the bar who serves as counsel of record, undertakes personal and immediate supervision of the student's performance, and assumes responsibility for the conduct of the defense.

By so limiting the program to approved and qualified students, and by requiring the personal and immediate supervision of experienced counsel, the Rules provide reasonable assurance that the defendant will receive competent representation. Defendant does not dispute the practical efficacy of the safeguards provided in the Rules. Neither does he contend that he received inadequate representation, nor that student performance under the Rules is so frequently inadequate that the program itself must be overthrown on that ground. Instead, he pitches his argument on a high theoretical ground; adopting the position of the Court of Appeal, he maintains that even if he and all other defendants represented under the Rules receive reasonably competent representation, in contemplation of law participation by one not yet a member of the bar is an abridgment of the right to assistance of counsel.

The issue defendant raises is one of first impression in California, but it has been considered by the courts of two other states with rules similar to the California Rules. Both states held that the participation of a supervised law student did not violate the defendant's right to assistance of counsel. (*State* v. *Daniels* (La. 1977) 346 So.2d 672, 674; *People* v. *Masonis* (1975) 58 Mich.App. 615, 619 [228 N.W.2d 489]; cf. *State* v. *Cook* (1974) 84 Wn.2d 342 [525 P.2d 761], upholding prosecution conducted by student intern working for district attorney.)

Defendant, however, ignores the cases upholding law student trial participation and instead cites a bizarre collection of decisions in which defendants were represented by imposters or impersonators. We find these cases clearly distinguishable. In *Huckelbury* v. *State* (Fla.App. 1976) 337 So.2d 400, the most noted case, defendant was represented by a man who had been refused admission to the Florida bar on moral grounds, but by deception had secured a position with the public defender. In reversing the conviction, the court observed that the case was *not* analogous to "the Florida Bar Program of allowing senior law students to appear as interns. The intern program requires a degree of supervision far beyond that which a Public Defender would be expected to maintain over his professional staff." (337 So.2d 400, 403.) In *People* v. *Cox* (1957) 12 Ill.2d 265 [146 N.E.2d 19, 68 A.L.R.2d 1134], *People* v. *Washington* (1976) 87 Misc.2d 103 [384 N.Y.S.2d 691], and *Baker* v. *State* (1912) 9 Okla.Crim. 62 [130 P. 820], the person who represented the defendant acted without supervision from qualified counsel; moreover, those decisions rest on the fact that defendant did not know that his representative was not a member of the bar. Finally, *Harrison* v. *United States* (D.C.Cir. 1965) 359 F.2d 214, involved not only unsupervised but plainly incompetent representation by an ex-felon who impersonated an absent member of the bar.[3]

None of these cases remotely resemble the case at bar. The imposter cases do, however, point up the importance of state standards fashioned to ensure that persons appointed to represent defendants are competent to do so. But we perceive no constitutional requirement that prevents a state from recognizing degrees of competence. The State Bar Rules here rest on the premise that although only a member of the bar is competent

---

[3]Defendant cites *Higgins* v. *Parker* (1945) 354 Mo. 888 [191 S.W.2d 668], but that decision does not support defendant's position. In *Higgins,* the defendant was represented jointly by an imposter and a member of the bar. Although the court stated in dictum that counsel under the Sixth Amendment means "a duly licensed attorney, and not a mere attorney in fact or a layman" (191 S.W.2d at p. 670), the court went on to examine the record and conclude that the defendant was not prejudiced by the imposter's presence. The decision thus rejects the proposition that representation by one who is not a member of the bar compels reversal of the defendant's conviction.

to undertake to represent a defendant without supervision, an advanced law student is competent to do so if he receives immediate supervision from experienced counsel. If such Rules in fact serve to provide defendants with competent defense, we find no abridgment of constitutional protections.

We must bear in mind the high objective of the constitutional provisions guaranteeing a right to assistance of counsel—that, unless he waives that right, every defendant should receive in fact reasonably competent and effective representation. A doctrinaire insistence that an appearance by one not a member of the bar is necessarily a denial of the defendant's constitutional right to assistance of counsel would not promote that objective. Instead, such a holding would undermine the programs undertaken by the bar and the law schools to assure that newly admitted lawyers are competent to undertake the independent responsibility of conducting a criminal defense. As we shall explain, many commentators, including our Chief Justice (see generally Bird, *The Clinical Defense Seminar: A Methodology for Teaching Legal Process and Professional Responsibility* (1974) 14 Santa Clara Law. 246, 270), believe that law school clinical training, including courtroom experience, is a prerequisite to the attainment of that level of competence.[4]

With the decline of the apprenticeship system of legal education in the latter part of the 19th century, many law students graduated and obtained admission to the bar without clinical experience. This lack of practical training had particularly serious consequences for the neophyte criminal lawyer. As described by Chief Judge Bazelon: "The ordinary law school graduate trying his first criminal case not only does not know what to do next; he does not know what to do first. Unlike his Wall Street counterpart whose firm provides a closely supervised apprenticeship period, the neophyte criminal lawyer is not apt to find such on-the-job training programs. The Wall Street litigator may take three years to argue

---

[4] It has been suggested that neither mock trials in law school nor passive observation of actual trials provides adequate clinical training. As explained by Judge Wenke of the Los ·Angeles Superior Court: "[I]n contrast to actual clinical experience, the mock trials are conducted under contrived circumstances. . . . Further, the effort in terms of producing a single mock trial precludes its use except as a demonstration. . . . There is really no available substitute, in terms of both authenticity and sufficient quantity, for genuine trials. As a teaching aid, the courts have no peer. [¶] Observance as a passive spectator can never have the impact that comes from the immersion in a constantly moving event. . . . After twenty years in the business, I make the flat assertion·that anyone who believes trial lawyers are either 'born' or can be developed without participating in the trial process itself simply does not know what he is talking about." (Wenke, *My View from the Bench in Clinical Education for the Law Student* (Council on Legal Ed. for Prof. Responsibility (1973) pp. 293-294; see also Bazelon, *Defective Assistance of Counsel* (1973) 42 U.Cin.L.Rev. 1. 19.)

his first motion; he may never try a case entirely on his own. The criminal lawyer may have his first solo case a few weeks after passing the bar." (Bazelon, *The Defective Assistance of Counsel* (1973) 42 U.Cin.L.Rev. 1, 13.)[5]

Beginning with Colorado in 1957, state bar associations set out to remedy the deficiency in legal education by authorizing practical training for law students, analogous to the practical training given students of medicine, dentistry, and other professions. In 1969 the American Bar Association (ABA) adopted a model rule which authorized any eligible law student to appear in court on behalf of an indigent client. In criminal matters in which the defendant has a right to counsel, the ABA rule required the personal presence of a supervising attorney.[6]

The California Rules, which provide for closer supervision of law students than does the ABA Model Rule,[7] were adopted in 1970. By the present date 47 of the 48 states in which a law school is located authorize practical training of law students; the majority permit such students to conduct the defense of criminal cases.[8] In response to the permission extended by state court and bar rules, virtually all American law schools, including all 15 accredited law schools in California, have adopted clinical programs. (See Leleiko, *State and Federal Rules Permitting the*

---

[5]One of the earlier critics of the absence of clinical training from the law schools was Judge Jerome Frank of the Second Circuit. In Courts on Trial (1949) he questioned:

"If it were not for a tradition which blinds us, would we not consider it ridiculous that, with litigation laboratories just around the corner, law schools confine their students to what they can learn about litigation in books? What would we say of a medical school where students were taught surgery solely from the printed page? No one, if he could do otherwise, would teach the art of playing golf by having the teacher talk about golf to the prospective player and having the latter read a book relating to the subject. The same holds for toe-dancing, swimming, automobile-driving, hair-cutting, or cooking wild ducks. Is legal practice more simple? Why should law teachers and their students be more hampered than golf teachers and their students? Who would learn golf from a golf instructor, contenting himself with sitting in the locker-room analyzing newspaper accounts of important golf-matches that had been played by someone else several years before? Why should law teachers be like Tomlinson? ' "This I have read in a book," he said, "and that was told to me. And this I have thought that another man thought of a Prince in Muscovy." ' " ((Atheneum ed. 1963) p. 229.)

[6]ABA Model Rule 2A provides that "An eligible law student may appear in any court . . . on behalf of any indigent person if the person on whose behalf he is appearing has indicated in writing his consent to that appearance . . . in the following matters: . . .

"3. Any criminal matter in which the defendant has the right to the assignment of counsel. . . . In such cases the supervising lawyer must be personally present throughout the proceeding."

[7]The ABA Model Rule, quoted in footnote 6, *ante,* requires personal supervision only in cases in which the defendant has a right to counsel. California Rule VI, however, requires "direct and immediate supervision" whenever the student appears "on behalf of the client in any public trial."

[8]The state rules regulating student clinical practice appear in Bar Admission Rules and Student Practice Rules (Klein ed. 1978) pages 996-1157.

*Student Practice of Law: Comparisons and Comments,* in Bar Admission Rules and Student Practice Rules, *op. cit. supra,* page 913.) The adoption of rules authorizing practical legal training throughout the United States, and the rapid response of the law schools to that authorization, attests in our opinion to the recognized need for such programs.

We share defendant's concern over the risks posed by representation by inexperienced counsel. Every trial attorney, however, is inexperienced when he tries his first case; the real question presented by this appeal is whether the attorney should begin to acquire that experience as a student pursuant to rules which require close supervision by experienced counsel, or only after becoming a member of the bar when no such supervision is required. A doctrinaire adherence to the fiction that admission to the bar, and that alone, confers competence to appear on behalf of a criminal defendant would seriously impede progress toward the objective of providing defendants with counsel who are able in fact to provide a reasonably competent defense.[9] The realities of the matter thus compel the conclusion that a defendant such as the one before us today who has received reasonably competent representation pursuant to a program replete with safeguards designed to ensure the competency of representation has not been denied his constitutional right to assistance of counsel merely because one of the two persons who appeared on his behalf was not yet a member of the bar.[10]

3. ■ *Defendant's charge that Loo's representation of defendant constituted the unauthorized practice of law is immaterial to the merits of this appeal.*

When the State Bar adopted the Rules, it did not submit them to this court for approval.[11] The State Bar claims such approval was unnecessary because a student who appeared only under direct supervision and

---

[9]There is another practical consequence to defendant's contention which we cannot overlook. Since the Rules were adopted in 1970, thousands of defendants have been represented by certified law students under those rules. If law student representation is per se constitutionally inadequate, any defendant convicted in such a proceeding could contend that he is entitled to a new trial, even though he makes no claim to have received less than reasonably competent representation. (See *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]; *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].)

[10]Defendant and the Court of Appeal both suggest that although in their view representation by a certified law student is necessarily an abridgment of defendant's right to assistance of counsel in felony cases, it might not be so in misdemeanor cases. *Argersinger* v. *Hamlin* (1972) 407 U.S. 25 [32 L.Ed.2d 530, 92 S.Ct. 2006], however, explicitly held that defendants charged with misdemeanors which might result in imprisonment are entitled to the same quality of representation as those charged with felonies. In light of that decision we cannot create higher standards of assistance of counsel in felony cases than in misdemeanors involving possible imprisonment.

[11]On July 27, 1978, while the instant case was pending before this court, the State Bar petitioned for court approval of the Rules. By order of December 13, 1978, we approved

exercises no independent judgment does not engage in the practice of law. Alternatively, the bar asserts that it adopted the Rules under its authority to make regulations to aid in the administration of justice (Bus. & Prof. Code, § 6031) and to ensure that persons admitted to the bar have received proper training (see Bus. & Prof. Code, § 6047).

Defendant, however, argues that the defense of a criminal case necessarily constitutes the practice of law. Because only this court has the power to admit persons to the practice of law (see *Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724, 727 [147 Cal.Rptr. 631, 581 P.2d 636]; *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 300 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310]), defendant maintains that student representation pursuant to the Rules is "unauthorized" practice of law.

We do not believe it necessary to resolve this controversy. Every violation of a rule respecting the practice of law does not require the reversal of the judgment in the case in which the violation occurred. In the present case Loo appeared on behalf of defendant in good faith, relying upon rules promulgated by the State Bar. Unlike a case in which a defendant is represented by an imposter or someone who knows he has no right to appear in court on behalf of the defendant, Loo's conduct gives rise to no inference of professional or moral irresponsibility. Defendant in fact received competent representation. Thus even if Loo's conduct might be considered the unauthorized practice of law—an issue we do not decide today—defendant incurred not the slightest prejudice as a consequence.

4. ■ *Defendant's written consent to representation by a certified law student is sufficient to comply with both constitutional requirements and the State Bar Rules.*

Defendant's counsel on appeal asserts that defendant may not have realized that Loo was a law student and that defendant did not knowingly and intelligently agree to an appearance by a person not admitted to the bar. Recognizing that defendant signed an explicit consent to student representation, counsel argues that such consent is invalid unless the record demonstrates that it was made knowingly and intelligently after having been advised of the dangers of his decision. (Cf. *Faretta* v.

the Rules provisionally while inviting comments and suggestions for changes prior to final action on the State Bar's request.

*California, supra,* 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525].) Counsel also points out that defendant does not speak English.

Defendant's argument rests on the premise that consent to representation by a certified law student under the Rules must be regarded as a waiver of defendant's right to the assistance of counsel, and hence must comply with the standards established for waivers of constitutional rights. We reject that premise. Because defendant was at all times represented by both an actively participating supervising attorney and a certified law student, he did have representation of counsel. Accordingly, no waiver of his right to counsel was required by either state or federal Constitution. Consequently, *Faretta* v. *California, supra,* and other cases establishing requirements for valid waivers of constitutional rights (e.g., *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464-465 [82 L.Ed. 1461, 1466-1467, 58 S.Ct. 1019, 146 A.L.R. 357]; *In re Haro* (1969) 71 Cal.2d 1021, 1026-1028 [80 Cal.Rptr. 588, 458 P.2d 500]) are not on point.

We are left only with the question whether the waiver complied with the Rules. Rule VI provides that a student may appear on behalf of a client only if the client "shall have approved in writing the performance of such acts by such student," which writing must be filed with the court. Defendant executed a written consent, reproduced in the footnote,[12] which on its face complies with this requirement; Mr. Zinter filed the consent with the trial court.

The State Bar Rules themselves should, of course, be read to require that any consent be knowingly and intelligently executed. But since constitutional rights are not at stake, the presumption that 'official duty has been regularly performed" (Evid. Code, § 664) should be sufficient to place on defendant the burden of showing the invalidity of the consent. Defendant has not attempted to carry that burden; in fact, he has never expressly claimed that his consent was unknowing or unintelligent, and never described the circumstances under which he executed the consent. We therefore conclude that the written consent filed with the court is sufficient to prove compliance with Rule VI.

---

[12]The consent executed by defendant reads as follows:

"I, Carlos Perez consent to allow Jack R. Loo, a California State Bar Certified Law Student, to represent me under the direct supervision of Edward Zinter, my court-appointed counsel, who will assume personal, professional responsibility in the matter entitled People of the State of California v. Carlos Perez, court docket # 10630, pending in the Superior Court of Imperial County, Department III.

"This consent extends to all matters in and outside of court, these matters being those set out by the California State Bar as proper for such Certified Law Students to engage in in a representative capacity pertaining to the practice of law.

"Consented to and signed this 6th day of September, 1977."

5. *The police failure to preserve the glass particles did not deny defendant due process of law.*

Defendant argues that the police failed to collect and preserve the glass particles found in his hands, arms, and the soles of his shoes. He asserts these particles were potentially exculpatory evidence and the police's failure to preserve them denied him due process of law.

Defendant was arrested leaving the scene of the crime shortly after its commission, with the stolen goods in hand. Under such circumstances, it would not be reasonable for the police to conduct an in-depth scientific investigation of the crime or to preserve every piece of evidence that might possibly be relevant. The police cannot be required to preserve evidence which is neither necessary to the investigation of the crime nor likely to benefit the defendant. (See *People* v. *Beagle* (1972) 6 Cal.3d 441, 450-451 [99 Cal.Rptr. 313, 492 P.2d 1].) On the facts of this case, we find no denial of due process in the police's failure to preserve the glass particles.

6. *Conclusion.*

We summarize our determination respecting the issues raised by the appearance on behalf of defendant of a certified law student. First, law student participation in a criminal defense pursuant to the Rules of the State Bar does not, as a matter of law, impair the constitutional guarantee to effective assistance of counsel. Second, although under the Rules defendant must consent in writing to student participation, that consent does not involve the waiver of a constitutional right. Third, at least in the absence of a substantial deviation from the Rules, any challenge to the effectiveness of the representation afforded defendant by the supervising attorney and certified law student must be judged by the same standards as those governing cases which do not involve certified students; here defendant makes no claim that his representation was inadequate by those standards. Finally, the possibility that, owing to the bar's failure to submit the rules to this court for approval, the student's appearance may arguably constitute "unauthorized" practice did not prejudice defendant and does not compel reversal of the judgment.

In brief, the program confers a dual benefit: the student, under the supervision of an experienced trial lawyer, gains exposure and training in actual trial techniques instead of the mere sterile description or observation of them; the litigant obtains the participation of an enthusiastic young law student, who in all likelihood will devote more time and

energy to the case than the often harassed and overworked public defender.

The judgment is affirmed.

Clark, J., Richardson, J., Manuel, J., Newman, J., and Kaus, J.,* concurred.

**MOSK, J.**—I dissent.

There can be no doubt that a clinical program is valuable to *law students.* For that reason law schools understandably are ardent proponents of the scheme. Our inquiry, however, must be limited to whether the program is of any value to a *criminal defendant,* and in particular whether it was detrimental to this defendant who was charged with a felony.

At the outset, the issue must be phrased accurately. The State Bar describes the problem to be whether the Sixth Amendment right to counsel is impaired "when attorneys are assisted by law students." The bar misconceives its own program: in general it is the law student who is assisted by the attorney of record and that is precisely what the record reveals here. The law student conducted the examination of witnesses and presented the entire argument to the jury; the attorney purported to assist him. Perhaps counsel performed some services that are not evident in the record, but the transcript indicates that while counsel was physically present throughout the 3-day trial, he uttered a total of 36 words. That averages out to 12 words per day, little more than required by a polite daily salutation to the judge hardly enough to suggest any contribution of substance.

Before proceeding further, we must review the *dramatis personae.* Carlos Perez is the defendant, charged with burglary, a serious felony; he is Spanish-speaking and required an interpreter throughout the trial. Edward Zinter, a deputy public defender, was his appointed counsel of record. Jack Loo was a law student, not a licensed member of the bar, who exceeded the minimum clinical program requirement of one and a half years of law study and approval of his school dean.

I

There is no question that Loo was in fact representing Perez before a judicial body, a function at the very peak of the practice of law. Yet Loo

*Assigned by the Acting Chairperson of the Judicial Council.

had not earned the right to practice law by meeting the State Bar qualifications and obtaining the approval of this court. His defense of a felony defendant thus constituted unauthorized practice of law. Actions much further removed from the heart of law practice have been subject to strict control and sanctions when attempted by nonlawyers. (See, e.g., *Farnham* v. *State Bar* (1976) 17 Cal.3d 605, 612 [131 Cal.Rptr. 661, 552 P.2d 445]; *Bluestein* v. *State Bar* (1974) 13 Cal.3d 162, 173 [118 Cal.Rptr. 175, 529 P.2d 599]; *Crawford* v. *State Bar* (1960) 54 Cal.2d 659, 668 [7 Cal.Rptr. 746, 355 P.2d 490].)

I do not suggest that Loo should be prosecuted for violating Business and Professions Code section 6126, for he acted in good faith and with the tacit approval of the trial court. But that approval does not by some *ipse dixit* transmute a law student into a lawyer for purposes of providing Perez with legal counsel. A competent law student is not the constitutional equivalent of a competent counsel.

The People attempt to justify Loo's representation of Perez by citing the "Rules Governing the Practical Training of Law Students" first adopted by the State Bar in January 1970 and amended in May 1976. These rules permit qualified students, under supervision of a practicing lawyer, to engage in a variety of practice-related activities including, under specified conditions, participation in trials or in hearings before courts and administrative agencies.

The short answer to this purported justification is that the State Bar is authorized to adopt such regulations "as may be necessary or advisable for the purpose of making effective the qualifications prescribed" for admission to the practice of law (Bus. & Prof. Code, § 6047). The State Bar is *not* authorized to admit a person to the practice of law. That is exclusively a function of this court, a fact we recently emphasized in *Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724, 727-728 [147 Cal.Rptr. 631, 581 P.2d 636] (also see *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 300 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310]). At no time have we admitted Loo, or any other student, to the practice of law. We will be abdicating our responsibility to protect the public if we do so.

## II

The majority opinion is an enigma on the issue of defendant Perez's consent to representation by the law student Loo. On the one hand the opinion declares that no waiver of right to counsel was required, and on the other hand it relies upon the written consent signed by Perez.

It seems elementary to me that when the most crucial aspects of trial proceedings—examination of witnesses and argument to the jury—are conducted by a layman, not a licensed attorney, defendant is not being represented by competent counsel, even though an attorney of record may be in the courtroom. The constitutional requirement is for zealous, not perfunctory, advocacy. (*Powell* v. *Alabama* (1932) 287 U.S. 45, 57-58 [77 L.Ed. 158, 164-165, 53 S.Ct. 55, 84 A.L.R. 527].) Consequently, under *Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525], *Walton* v. *Arkansas* (1962) 371 U.S. 28, 29 [9 L.Ed.2d 9, 10, 83 S.Ct. 9], *Carnley* v. *Cochran* (1962) 369 U.S. 506, 516 [8 L.Ed.2d 70, 77, 82 S.Ct. 884], and a host of other cases, if such proceedings are to be valid defendant must knowingly and intelligently waive his right to counsel.

Thus our duty is to examine the record to determine if Perez knowingly and intelligently consented to waiver of counsel in connection with the significant aspects of his trial. Apparently he did sign the form described in footnote 12 of the majority opinion.

As mentioned above, Perez spoke Spanish. The form is in English, in a style not readily comprehended by laymen fluent in English, let alone by one whose native tongue is Spanish. Most importantly, however, the record is totally silent as to whether Perez was given an explanation either by Zinter or by the court (1) that a certified law student is not qualified to practice law or to represent clients; (2) that Zinter planned to forego all examination of witnesses and all argument to the jury and proposed to assign that responsibility to the student; and (3) the nature of the limitation to matters "set out by the California State Bar as proper" for a student to engage in. If all those relevant details were explained to Perez in Spanish—and it is naive to believe they were—the record fails to so disclose. Thus there is not a scintilla of evidence in the record to confirm that Perez consented knowingly and intelligently to representation by a layman.[1]

There are some rights that will never be deemed waived unless the defendant is first expressly advised of their existence. (*Michigan* v. *Mosley* (1975) 423 U.S. 96, 108 [46 L.Ed.2d 313, 324, 96 S.Ct. 321] (conc. opn. of White, J.).) The right to assistance of counsel is such a right. (*Boykin* v.

---

[1] Indeed, a brief colloquy between the prosecutor and defendant suggests the latter believed Loo was an attorney and that he thus had two lawyers:

"By Mr. SIDDELL (the District Attorney) Q: You're represented by counsel in this action; is that correct?

"By Mr. PEREZ A: An attorney? A lawyer? A lawyer?

"By Mr. SIDDELL Q: Yes, have you been contacted by an attorney?

"By Mr. PEREZ A: Just the two...."

At that point the reply was interrupted by the court and never completed.

*Alabama* (1969) 395 U.S. 238, 242 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709]; *Carnley* v. *Cochran, supra,* 369 U.S. at pp. 512-513 [8 L.Ed.2d at p. 75].) "The record must show . . . that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (*Carnley* v. *Cochran, supra,* at p. 516 [8 L.Ed.2d at p. 77]; accord, *In re Haro* (1969) 71 Cal.2d 1021, 1027 [80 Cal.Rptr. 588, 458 P.2d 500].) Since we must indulge in every reasonable presumption against waiver (*Brookhart* v. *Janis* (1966) 384 U.S. 1, 4 [16 L.Ed.2d 314, 317, 86 S.Ct. 1245]; *Brewer* v. *Williams* (1977) 430 U.S. 387, 404 [51 L.Ed.2d 424, 439-440, 97 S.Ct. 1232]), we may not presume from the silent record that Perez voluntarily and intelligently waived his constitutional right to have his trial conducted by a bona fide attorney. (*Boykin* v. *Alabama, supra,* 395 U.S. at p. 242 [23 L.Ed.2d at p. 279].)

Perez had the right to represent himself, i.e., waive counsel entirely. (*Faretta* v. *California, supra,* 422 U.S. at p. 834 [45 L.Ed.2d at p. 581]); and in certain jurisdictions, unlike California, it has been held that an accused may likewise waive his right to representation by one licensed to practice law. (E.g., *People* v. *Cox* (1957) 12 Ill.2d 265 [146 N.E.2d 19, 22, 68 A.L.R.2d 1134].) But in either case such waiver should be accepted by the court only after the defendant has been made aware of the dangers and disadvantages of self-representation, or of representation by an unlicensed person if that is to be permitted, so that the record will establish "that 'he knows what he is doing and his choice is made with eyes open.' " (*Faretta* v. *California, supra,* 422 U.S. at p. 835 [45 L.Ed.2d at p. 582]; accord, *People* v. *Cox, supra,* 146 N.E.2d at p. 22.)

### III

Mr. Justice Staniforth, writing for a unanimous Court of Appeal in this case, well articulated the potential deficiency inherent in felony trials conducted by law students. I adopt his views as follows:

"Here, Perez's writing authorized a nonlicensed person to try his case, to represent him, albeit under the direct supervision of a licensed lawyer. In the context of a felony jury trial such a consent triggers several Sixth Amendment alarms, for the right to counsel encompasses not only assistance of counsel but assistance of adequate counsel. The right to counsel as we have heretofore documented must be afforded in a real, not just a perfunctory, sense. The constitutional requirements are for 'zealous and active counsel' and representation in a 'substantial sense' not merely 'pro forma.' (*Powell* v. *Alabama, supra,* 287 U.S. 45, 57-58 [77 L.Ed. 158, 164-165, 53 S.Ct. 55, 59-60].)

"See also *Anders* v. *California*, . . . 386 U.S. 738, 744 [18 L.Ed.2d 493, 498, 87 S.Ct. 1396, 1400].

"The dangers inherent in the practice of law by a student have been articulated thus: '[A]ny law student . ... is apt to overlook relevant facts, to base his opinion of the law on a century-old case in a minority jurisdiction, to be unaware of statutory or administrative regulation which has supplanted the common law, and to fail to recognize the available defenses. Because the law is, in fact, a "seamless web," it is impossible to give competent advice in one area without a partial understanding of all the law.' (117 U.Pa.L.Rev. 970, . . . at p. 993, citing 36 Tex.L.Rev. 346, 348 (1958) *Unauthorized Practice by Law Students: Some Legal Advice About Legal Advice.*) We contrast the conceded premise of the incompleteness of the training of the law student with the competence requirements of the licensed attorney in the trial arena: 'The competency of representation includes competency in advice, in the general knowledge of criminal procedure, in the ability to understand human relationships and in insight into everyday living that can separate sham from truth. Competency means, as well, adequate examination at the pretrial hearing, astuteness in discovering inaccuracy and faulty memory, in recognizing overuse of imagination and downright dishonesty. Competency should also include a full understanding of trial technique, of cross-examination and presentation before a jury. These concepts combined with a fertile knowledge of the law and a freedom to respectfully present objections and counsel's views all add up to what competency and adequate representation should be.' (117 U.Pa.L.Rev., *supra*, at p. 993, quoted from Brownell, Legal Aid in the United States, p. 142.)

"In the trial of a criminal case, whether jury or nonjury, the importance of manner, the timing, and the form of presentation of the defense is profound. Years of experience are required to hone the skills necessary to put the right question in a form and in a context to obtain the desired effect. Whether it be direct or cross-examination, the manner, the tone, of asking the question can be of significance. The unskilled asking of a too-broad question on cross-examination can result in the opening of a whole new field of inquiry not otherwise authorized—with possible disastrous effects. The failure to object, or to object timely, or to object on the right ground, may foreclose a possible defense.

"An experienced trial judge can only watch with horror as a neophyte destroys his own case by inept questioning. The immediate presence of the experienced lawyer cannot undo the harm done by a single disastrous question. He cannot unring the bell; he cannot rehabilitate the effect of

clumsy or disastrous handling of a difficult witness. There may be but one moment of time in the course of a trial when the right act, word or decision can be made and the case won. A reasonable doubt may be created. If that moment of opportunity passes, no amount of post-verdict advice to or critique of the law student's performance will give solace to a defendant in prison.

"In evaluating whether representation by a law student with a licensed attorney in silent presence is the functional equivalent of assistance of counsel, another factor should be considered. The admission to practice law in California depends upon moral fitness as well as demonstrated knowledge of the law. The State Bar not only scrutinizes the moral reputation of applicants, but also requires that they take and pass a Professional Responsibility Examination in which they must demonstrate an understanding of and ability to apply the ethical standards of the profession. Reason fully supports such admission requirements. 'There is in fact, no vocation in life where moral character counts for so much or where it is subjected to more crucial tests by citizen and the public than is that of members of the bar. His client's life, liberty, property, reputation, the future of his family, in fact all that is closest to him are often in his lawyer's keeping. The fidelity and candor with which he performs his trust, point up reasons that distinguish the legal profession from other businesses.' (*State* v. *Murrell* (Fla.) 74 So.2d 221, 224.)

"By contrast the certified law student's moral standards and working knowledge of professional ethics are largely unknown. There is no requirement that such a student have taken a course in professional responsibility; certification requires merely 'the student's written certification that he or she has read and is familiar with the Code of Professional Responsibility of the American Bar Association, and the Rules of Professional Conduct of the State Bar of California and will abide by the same in the activities permitted by these Rules.' In *Huckelbury* v. *State* (Fla.) 337 So.2d 400, defendant pleaded guilty to first degree murder while he was represented by an employee of the public defender who had passed the Florida Bar Examination but who was deemed morally unfit to practice and had not been admitted. Recognizing '[t]he right to court-appointed counsel presupposes appointment of counsel fully accredited by competency *and moral standards* to practice law' (*id.*, p. 403; italics added), the court rejected the arguments of the state to the effect that the quality of legal services rendered is the only controlling factor in determining whether the defendant's right to counsel was fulfilled."

IV

One other troublesome factor plagues this student program. Obviously criminal defendants with resources will not engage a student to conduct

their defense; they will retain and pay a fee to a licensed member of the bar, and for that fee they will expect their attorney to conduct the trial, to examine witnesses and to argue to the jury. Thus only indigent defendants will have students thrust upon them through assigned counsel, generally the public defender. This raises a potential problem of inequality of representation based upon a defendant's economic status.

In *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 561 [68 Cal.Rptr. 1, 440 P.2d 65] we emphasized the importance of the attorney-client relationship: "it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty." We also confirmed that the same intimate relationship must prevail whether the attorney is retained or appointed. "To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused." (*Id.,* p. 562.)

V

I am not unsympathetic to law school clinical programs. They are a useful adjunct to the classroom and are likely to produce more able and resourceful practitioners in the future. But there are pragmatic limits to the professional services that students should be permitted to undertake. A felony trial transcends those limits.

It is doubtful that any patient would knowingly and intelligently consent to major surgery by a medical student with one and a half years of schooling, not even with a surgeon standing by. The patient's life and health take precedence over the student's training. So here, the defendant's liberty for years into the future, at issue in a felony trial, cannot be jeopardized by placing a legal scalpel in the untested hands of a mere student. However desirable practical experience may be to the law student, protection of a defendant's fundamental right to competent counsel prevents approval of a scheme to move the moot court program into the felony courtroom.

Like the Court of Appeal, I would reverse the judgment.