Docket Nos. 107003, 107112 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* DENZEL W., a Minor (The People of the State of Illinois, Appellant, v. Denzel W., a Minor, Appellee).–THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KENNETH SMITH, Appellant.

*Opinion filed March 18, 2010.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride and Karmeier concurred in the judgment and opinion.

Justice Freeman dissented, with opinion, joined by Justice Burke.

## OPINION

This consolidated appeal raises the issue of whether a defendant's right to counsel is violated where defense counsel fails to comply with Supreme Court Rule 711 (210 Ill. 2d R. 711). Specifically, counsel in each of these cases failed to file the accused's written consent to participation in the defense by a nonattorney senior law student or law graduate (a 711 law student). In *Denzel W.*, respondent was adjudicated delinquent following a bench trial in which a 711 law student assisted the assistant public defender and conducted the direct and redirect examinations of one defense witness. In *Smith*, a 711 law

student participated along with the assistant public defender in a hearing on defendant's motion to suppress evidence. In neither case does the record indicate that defense counsel obtained the consent of the respondent or defendant to participation by the 711 law student. Respondent and defendant argue that the public defender's failure to obtain such consent denied them their right to counsel. For the reasons that follow, we reverse the decision of the appellate court in *Denzel W.* and remand that cause for further proceedings consistent with this opinion. We affirm the decision of the appellate court in *Smith*.

## BACKGROUND

### 1. *In re Denzel W.*

Respondent Denzel W., a minor, was charged, in the circuit court of Cook County, with one count of aggravated battery against Bobbi F.[1] arising from an incident that occurred at Ridgeland Commons community park in Oak Park, Illinois. At a bench trial on April 7, 2005, respondent was represented by an assistant public defender, who stated before trial that he would "be assisted by *** 7-11 [*sic*] law clerk [J.F.]" The cover sheet of the trial transcript similarly identifies J.F. as "7-11," but no written consent to her participation was filed.

At trial, Bobbi F. testified that she and several friends had gone to Ridgeland Commons to sled, and Bobbi was approached by respondent and his friends. Bobbi stated that although she tried to walk away, respondent followed her and began making lewd comments. Bobbi then ran away from respondent into a park building, but respondent followed her and dragged her out of the building by her ponytail. According to Bobbi, respondent then pulled her to the front of the building where he repeatedly slammed her head into a patch of ice. A few moments later, respondent picked Bobbi up and threw her into a garbage can before walking away. On cross-examination, conducted by the assistant public defender, Bobbi

---

[1]Although the transcript spells the victim's name phonetically as "Bobby," the parties' briefs to this court indicate that her name is spelled "Bobbi."

admitted that she and respondent had quarreled in the past. The State also called Grant M., one of the boys who had been sledding with Bobbi F., and Bobbi's mother. Both witnesses were cross-examined by the assistant public defender.

Respondent's first witness was Tequila T., and the direct examination of Tequila was performed by the 711 law student, J.F. Tequila testified that she had been sledding at Ridgeland Common that day along with Bobbi F., Grant M., and others. She stated that she had not seen anything out of the ordinary that day, and she had not seen Bobbi with respondent, although she had seen respondent and his friends at the park. When J.F. began to ask Tequila a leading question about what she had seen respondent and his friends doing, the court interjected an admonition:

> "Q. [by J.F.] Did you see him doing anything with his friends?
>
> A. They was just talking.
>
> Q. They were just socializing at the Ridgeland Commons?
>
> THE COURT: No. No. It's not what she said. Don't you summarize and put words in her mouth. You ask questions. That's all. You do not ask leading questions."

J.F. also attempted to elicit testimony about Bobbi's reputation around school:

> "Q. Did you go to school with [Bobbi]?
>
> A. Yes.
>
> Q. What type of reputation did [Bobbi] have at school?
>
> [State's Attorney]: Objection.
>
> THE COURT: Her reputation–Sustained.
>
> [Assistant public defender]: Judge.
>
> THE COURT: If it goes to peacefulness, that's fine. If it goes to anything else, no. It has nothing to do with this case. You have to lay a proper foundation for reputation. If you're going to go to peacefulness.
>
> [J.F.]: Nothing further with this witness, your Honor."

On cross-examination, Tequila claimed that she and others had warned Bobbi not to go down the sledding hill when respondent and

-3-

his friends were there. The assistant public defender then attempted to begin a redirect examination, but he was stopped by the court, who said, "You didn't start this examination. You don't get to finish it. Your co-counsel did the examination. *** We don't play tag team here." The attorney replied, "That's fine," and the court added, "If she [J.F.] has other questions to ask on redirect, fine." J.F. then conducted a brief redirect.

J.F. also conducted a direct examination of Travis P., a friend of respondent. Travis testified that he had been with respondent at the park, and that he had been apart from respondent for only about two minutes during the afternoon. He also said that he did not see respondent grab Bobbi, nor did he see any injuries on Bobbi that day. Respondent then called Bobbi F. to testify again, and she was examined by the assistant public defender.

Finally, respondent testified on his own behalf, also examined by the assistant public defender. Respondent claimed that he and his friends were having a snowball fight when one of his friends accidentally hit Bobbi with a snowball. According to respondent, Bobbi mistakenly believed he had thrown the errant snowball, and the two had argued, but that no physical altercation had taken place. He specifically denied chasing Bobbi, hitting her, or slamming her head into the ground.

The assistant public defender also gave respondent's closing argument, arguing that Bobbi had fabricated the entire story because she "never liked" respondent. The court found that the State had met its burden, and adjudicated respondent delinquent. Respondent appealed, and the appellate court reversed the circuit court's decision and ordered a new trial. *In re Denzel W.*, No. 1–05–3374 (unpublished order under Supreme Court Rule 23). The court found that the failure to obtain consent to representation by a 711 law student was a violation of respondent's right to counsel, relying on *People v. Schlaiss*, 174 Ill. App. 3d 78 (1988) (finding defendant was denied counsel where he did not consent to participation of 711 law student in his representation). It rejected the State's argument that the failure should be subject to a harmless-error analysis, holding that the lack of consent amounted to a complete denial of counsel. We granted the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315).

-4-

## 2. *People v. Smith*

Defendant Kenneth Smith was charged, in the circuit court of Cook County, with possession of a controlled substance with intent to deliver, delivery of a controlled substance, possession of a controlled substance with intent to deliver within 1,000 feet of a school, and delivery of a controlled substance within 1,000 feet of a school. Before trial, defendant moved to quash his arrest and suppress all evidence gathered therefrom, arguing that the police had not had probable cause.

The circuit court held a hearing on the motion, and defendant was represented by an assistant public defender and J.B., an intern practicing pursuant to Rule 711. The cover sheet for the transcript of the hearing indicates that J.B. appeared "[p]ursuant to Supreme Court Rule 7-11 [*sic*]." Nothing else in the record references J.B.'s status; neither J.B. nor the assistant public defender stated on the record that J.B. was not a licensed attorney, and no written consent from defendant was filed.

During the hearing, J.B. conducted the examination of defendant, who testified that he had been walking on a sidewalk when a police car pulled up on the street behind him. According to defendant, the officers got out of the car and asked defendant if he knew "anything about a gun." Defendant testified that the officers then searched him and, finding the packets of heroin, arrested him.

The State's sole witness, Officer Griggs, testified that he had observed defendant and codefendant Antonio Rollins standing on a corner for 20 to 30 minutes. During that time, whenever a car pulled up one of the defendants would approach the car and take something from the driver. He would then walk back to the corner and then return to the car, handing something off to the driver. Griggs testified that he could not observe what exactly had changed hands. However, after the third car had pulled away, Griggs radioed to nearby officers to stop the car and search the occupant. When he received confirmation that the driver of that car had small packets of heroin wrapped in tinfoil, Griggs approached defendant and Rollins and arrested them. Griggs did not personally search defendant, but he testified that the officers who performed the search found three tinfoil packets containing heroin. On cross-examination, conducted by the assistant public defender, Griggs agreed that it was dark at the time

of the arrest and he could only see using artificial light. He also agreed that he did not know what had changed hands between the men on the street and the drivers, but he suspected it was drugs.

After defendant and Griggs had testified, J.B. gave the defendant's argument on the motion. He conceded that the police had reasonable suspicion enough to stop defendant, but argued that Griggs did not have probable cause to arrest defendant. At the close of the hearing, the trial court denied defendant's motion, finding that Griggs' testimony had established the existence of probable cause to arrest defendant.

At trial, defendant was represented by two assistant public defenders; J.B. did not participate in the defense. A jury found defendant not guilty of delivery of a controlled substance but guilty of possession of a controlled substance within 1,000 yards of a school. Defendant appealed, and the appellate court affirmed defendant's conviction. *Smith*, 384 Ill. App. 3d 489. The court analyzed defendant's claims in the context of an ineffective assistance of counsel claim, noting that defendant was represented at trial only by licensed attorneys. The court also opined that J.B.'s participation in the motion to quash hearing was minimal, and he primarily did nothing more than reassert the written motion prepared by a licensed public defender. We granted defendant's petition for leave to appeal pursuant to Supreme Court Rule 315, and we consolidated his appeal with the State's appeal in *Denzel W.*

ANALYSIS

Under Supreme Court Rule 711, a recent law graduate or senior law student who has completed three-fifths of his or her course work and who is in good academic standing may perform legal services "[u]nder the supervision of a member of the bar of this State, and with the written consent of the person on whose behalf he/she is acting, which shall be filed in the case and brought to the attention of the judge." 210 Ill. 2d R. 711(c). In criminal cases "in which the penalty may be imprisonment," Rule 711(c)(2)(ii) provides that the 711 law student may "participate in pretrial, trial, and posttrial proceedings as an assistant of the supervising member of the bar, who shall be present and responsible for the conduct of the proceedings."

210 Ill. 2d R. 711(c)(2)(ii). In "all other civil and criminal cases," Rule 711 permits the student to conduct "all pretrial, trial, and posttrial proceedings" under the supervision of a licensed attorney who need not be present. 210 Ill. 2d R. 711(c)(2)(iii).

Rule 711 provides a valuable mechanism by which law students can gain practical experience in the courtroom under the close supervision of an experienced attorney. We join the numerous courts that have lauded the invaluable experience provided to law students through student licensing programs similar to that provided in Rule 711. See, *e.g.*, *Duval v. State*, 744 So. 2d 523, 525 (Fla. App. 1999); *City of Seattle v. Ratliff*, 100 Wash. 2d 212, 217-18, 667 P.2d 630, 633 (1983); *People v. Perez*, 24 Cal. 3d 133, 140-42, 594 P.2d 1, 5-6, 155 Cal. Rptr. 176, 180-81 (1979). However, students who are granted permission to perform legal services under Rule 711 must adhere to the same rules of legal procedure, ethics, and practice that bind fully licensed attorneys. Along with the privilege of their closely supervised practice comes the responsibility of ensuring that they are at all times in compliance with the law and the rules of this court. This responsibility applies with special force to the requirements enumerated in Rule 711, the fulfillment of which are conditions precedent to the practice of law under that rule. Similarly, it is incumbent upon all members of the bar who allow 711 law students to assist in their practice, who remain "responsible for the conduct of the proceedings" under the rule (210 Ill. 2d R. 711(c)(2)(ii)), to ensure that our rules are followed.

As we have often noted, "our rules are not mere suggestions." *People v. Houston*, 226 Ill. 2d 135, 152 (2007); see also *People v. Wilk*, 124 Ill. 2d 93, 103 (1988) ("At the risk of stating the obvious, it should be pointed out that the rules adopted by this court concerning criminal defendants *** are in fact rules of procedure and not suggestions"). Indeed, they have the force of law and are to be construed in the same manner as statutes. *Houston*, 226 Ill. 2d at 152; *People v. Norris*, 214 Ill. 2d 92, 97 (2005). Here, the plain meaning of Rule 711 is clear: written consent must be obtained from the client sought to be represented *before* legal serviced may be performed by the 711 law student. Accordingly, until consent is obtained and filed pursuant to Rule 711, the student may *not* perform legal services.

In the cases before us, we first acknowledge that, although all parties assume that neither respondent nor defendant in fact consented to the participation of the 711 law student, neither has specifically alleged an actual lack of consent. However, Rule 711 requires not only that consent be obtained, but that written consent "be filed in the case and brought to the attention of the judge or presiding officer." 210 Ill. 2d R. 711(c). Neither record before us contains the requisite written consent, and the State has not argued that written consent was actually filed in either case. Therefore, we find that Rule 711 was violated in both cases.

Respondent and defendant urge us to end our inquiry here. They argue that they have been denied counsel simply because their assistant public defenders were assisted by 711 law students who failed to comply with all of Rule 711. They rely on the decision by the Supreme Court of Washington in *City of Seattle v. Ratliff*, which held that "representation by a law student intern who fails to comply with the conditions placed upon his or her practice does constitute an absolute denial of the right to counsel which requires reversal." *Ratliff,* 100 Wash. 2d at 219, 667 P.2d at 634. Our appellate court adopted the *Ratliff* approach in *People v. Schlaiss*, 174 Ill. App. 3d 78 (1988), and in *Denzel W.* below.

Initially, we note that the facts in *Ratliff* are distinguishable from the present cases. In *Ratliff*, the defendant appeared for trial on three consolidated charges, but no counsel appeared to represent him. The defendant told the court that an intern with the county public defender association was representing him in another case, and the court summoned the intern. When the intern arrived, the court expressed an intent to go forward with the trial with the intern as counsel. The intern explained that he was a legal intern, that he was not representing the defendant in the cases scheduled for trial, and that he was not prepared to go forward with a trial. At the prosecution's urging, however, the court required the intern, over objection, to proceed with the trial. *Ratliff,* 100 Wash. 2d at 213-15, 667 P.2d at 630-31.

The *Ratliff* court acknowledged that "one who is authorized to practice only under certain conditions, such as a legal intern, may be considered 'counsel' for constitutional purposes," but it emphasized that "this is so *only* when he or she complies with those conditions"

-8-

(emphasis in original). *Ratliff*, 100 Wash. 2d at 218, 667 P.2d at 633. It therefore concluded that, because the intern was not "counsel" for constitutional purposes, the defendant had been denied counsel. *Ratliff*, 100 Wash. 2d at 219, 667 P.2d at 634.

*Schlaiss*, on the other hand, applied *Ratliff* to very different factual circumstances. There, the defendant was represented at trial and sentencing by an assistant public defender *and* a 711 law student. As in the present cases, the 711 law student failed to record the written consent of the defendant. Citing the broad language of *Ratliff* for support, the appellate court held that "[b]ecause the conditions necessary for [the student's] representation of [the defendant] were not met, he cannot be considered 'counsel' for constitutional purposes. Therefore, under these facts, we conclude that the defendant was denied counsel in violation of the sixth amendment." *Schlaiss*, 174 Ill. App. 3d at 81.

This court has held that, for constitutional purposes, the term "counsel" means "a duly licensed and qualified lawyer, and not an attorney in fact or a layman." *People v. Cox*, 12 Ill. 2d 265, 269 (1957). Our rules establish the requirements that attorneys must meet to be considered "duly licensed and qualified." See, *e.g.*, 210 Ill. 2d Rs. 704 ("Qualification on Examination"), 705 ("Admission on Motion"). Attorneys who do not comply with the rules of licensure we have established are not "duly licensed" to practice in this state. However, a 711 law student is allowed to practice notwithstanding the fact that he or she has not completed the ordinary requirements of licensure; the student has not necessarily had his or her education certified by an accredited law school, proven his or her competence by passing a bar examination, and established his or her fitness to practice law by passing a character and fitness evaluation. To ensure that the client will receive adequate representation, Rule 711 therefore imposes specific procedures that must be followed, and a student who fails to comply with Rule 711 has not satisfied the requirements we have established to protect the rights of his or her client. Thus, we hold that a student who has not complied with the requirements of Rule 711 is not counsel for constitutional purposes.

This determination does not end our inquiry, however. In these cases, respondent and defendant were not represented by law students alone. Both were also represented by fully licensed assistant public

defenders who were present and actively involved in the representation. As the California Supreme Court said of California's analogous student practice rule in *People v. Perez*,

> "[t]he defendant \*\*\* is not merely represented by a student who has not been admitted to the bar; he is represented by an experienced member of the bar who serves as counsel of record, undertakes personal and immediate supervision of the student's performance, and assumes responsibility for the conduct of the defense." *People v. Perez*, 24 Cal. 3d at 138, 594 P.2d at 4, 155 Cal. Rptr. at 179.

Rule 711 specifically provides that, in criminal cases in which the penalty may be imprisonment, the student-practitioner may participate only "*as an assistant* of the supervising member of the bar who shall be present *and responsible for the conduct of the proceedings*." (Emphases added.) 210 Ill. 2d R. 711(e). Thus, the rule is very clear that the responsibility for the representation falls not on the student but on the supervising attorney. We acknowledge that the supervising attorney need only be actually present when the defendant may face imprisonment; in other criminal cases, a 711 law student may appear alone. 210 Ill. 2d R. 711. However, the United States Supreme Court has recognized a constitutional right to counsel only where the defendant may face imprisonment. See *Scott v. Illinois*, 440 U.S. 367, 373, 59 L. Ed. 2d 383, 389, 99 S. Ct. 1158, 1162 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538, 92 S. Ct. 2006, 2012 (1972), Therefore, Rule 711 specifically requires that, in cases in which the defendant is entitled to counsel, a fully licensed attorney must be present and supervising the representation.

The presence of the licensed attorney, who certainly is counsel for constitutional purposes, is not somehow "cancelled out" by the law student's participation, even if the law student has not complied with Rule 711. Where the supervising attorney properly supervises the 711 law student and remains responsible for the representation, as Rule 711 requires, we hold that the defendant has not been denied counsel. To the extent that *People v. Schlaiss* is inconsistent with this holding, it is overruled.

Conversely, where the defendant is entitled to counsel but the 711 law student appears alone in violation of the rule, the defendant clearly has been denied counsel. *In re Moore*, cited by respondent and

defendant, is an example. There, the trial court appointed a law student, believing him to be an assistant public defender, to assist a *pro se* respondent in an involuntary commitment proceeding at which the respondent had a statutory right to counsel. *In re Moore*, 63 Ill. App. 3d 899, 900 (1978). The law student was not supervised at any point by a licensed attorney, and therefore respondent did not receive the assistance of counsel to which he was entitled.

However, a supervising attorney does not satisfy his or her obligation under Rule 711 merely by being physically present. Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), a defendant can demonstrate that he received ineffective assistance of counsel by showing both that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Although respondent and defendant urge us to adopt a new framework in which to evaluate failures to comply with Rule 711, we find that the *Strickland* analysis provides a more appropriate avenue for resolving such errors. Thus, where the attorney's supervision of a 711 law student is insufficient in quality, nature, or duration, such that his or her performance amounts to ineffective assistance of counsel under *Strickland*, the defendant is entitled to a new trial.

Finally, respondent and defendant argue that consent to participation by a 711 law student is equivalent to a partial waiver of counsel, and thus any failure to obtain that consent must be treated as an independent error of constitutional magnitude. Because we find that a defendant who is represented with the aid of a 711 law student receives his "counsel" for constitutional purposes from the licensed supervising attorney, we necessarily reject this argument. Where the supervising attorney fulfills his or her responsibility under Rule 711, the defendant does not give up his right to counsel by consenting to the student's participation, nor does the failure to obtain that consent itself amount to a denial of counsel.

We now turn to the cases at bar. In *Denzel W.*, the appellate court reversed the trial court's ruling adjudicating respondent delinquent and ordered a new trial, finding that the violation of Rule 711 resulted in a complete denial of counsel. *In re Denzel W.*, No. 1–05–3374

-11-

(unpublished order under Supreme Court Rule 23). We disagree. As we have explained, a violation of Rule 711 does not amount to a *per se* denial of counsel. Instead, the supervising attorney's performance must be evaluated as a whole under *Strickland*. The failure to file written consent under Rule 711 is one factor to consider when evaluating whether counsel was ineffective, but a reviewing court must assess that failure in light of counsel's overall performance, and it must determine whether counsel's performance prejudiced the accused. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

Respondent also argues that he was denied counsel when the trial court prevented the supervising assistant public defender from conducting the redirect examination of Tequila T., and in the alternative, he argues that his counsel was ineffective, citing several alleged errors made at trial. With respect to the redirect of Tequila T., the appellate court noted that the trial court's actions were "error," but because the appellate court resolved respondent's claims on the issue of consent alone, it performed no analysis of the import of the alleged error. Similarly, the court did not address respondent's claims that he received ineffective assistance of counsel.

We agree with the appellate court that the trial court's actions in *Denzel W.* are troubling. Although we appreciate the court's desire to teach the 711 law student through experience, it is important that courts before whom 711 law students appear be particularly mindful of the supervising attorney's obligation to ensure that counsel is effective. As the appellate court stated, "[a]dherence to preferred courtroom procedures should not trump the accused's right to effective assistance of counsel in a 'teaching exercise' involving a 711 student." *In re Denzel W.*, No. 1–05–3374 (unpublished order under Supreme Court Rule 23). Therefore, although we disagree with the appellate court's determination that respondent is entitled to a new trial based on a Rule 711 violation alone, we remand *Denzel W.* to the appellate court for a determination of whether the trial court's actions, along with respondent's other claimed errors, resulted in respondent's receiving ineffective assistance of counsel.

Unlike the appellate court in *Denzel W.*, the appellate court in *Smith* did consider defendant's claims as part of an ineffective assistance of counsel analysis, finding that counsel was not

-12-

ineffective. *People v. Smith*, 384 Ill. App. 3d 489 (2008). Defendant argues only that the court should have instead employed a *per se* rule; he does not argue that the court's *Strickland* analysis was flawed, and he has not raised any other claims of error. Because we reject defendant's sole argument that the failure to comply with Rule 711 amounts to a *per se* denial of counsel, we affirm the decision of the appellate court in *Smith*.

## CONCLUSION

We reject respondent and defendant's claim that they were denied counsel because they did not consent to a 711 law student's participation in their defense. Accordingly, we reverse the decision of the appellate court in *Denzel W.* and remand the cause to the appellate court with directions to consider respondent's additional arguments. We affirm the decision of the appellate court in *Smith*.

*No. 107003–Reversed and remanded.*
*No. 107112–Affirmed.*


JUSTICE FREEMAN, dissenting:

This case presents the simple issue of what happens when Rule 711 is violated due to the failure to obtain the required written consent of the person on whose behalf the law student was acting. Resolving this issue requires that we interpret our own rules. In so doing, the court once again harrumphs the familiar edict that its rules "are not mere suggestions" and that "[i]ndeed, they have the force of law." Slip op. at 7; see also *People v. Glasper*, 234 Ill. 2d 173, 189 (2009) (addressing what happens when a trial judge does not permit *voir dire* questioning as required under Rule 431). Those familiar with this court's other, recent interpretations of its own rules will recognize what comes next: an analysis that will actually strip Rule 711 of this "force of law," rendering it nothing more then the "mere suggestion" that it is not supposed to be. The last most recent example of this edict-invalidating analysis came in *People v. Glasper*. There, the court's answer to what happens when Rule 431 is violated

was the same as here: nothing. These kinds of decisions not only undermine the force of our rules, they erode respect for judicial decisions. After all, how many times can this court continue to say "Do as I say, not as I do" before no respect remains? The analysis offered by the court in these consolidated appeals is problematic for a number of reasons. In the Smith appeal, which is the easier case of the two, the court fails to give effect to the consent requirement of Rule 711, thereby rendering that portion of the rule mere surplusage. In the juvenile case, the court fails to even consider whether the rule has any application in juvenile proceedings. I therefore respectfully dissent.     This court promulgated Rule 711 in May 1969, "in response to the increased interest in clinical legal experience which began to be felt by law students and law faculties *** an increased interest which fit nicely with the growing demands being placed on the judicial system by the need to provide for the representation of indigents" in the wake of *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963). Ill. Ann. Stat., ch. 110A, par. 711, Historical & Practice Notes, at 592 (Smith-Hurd 1985). The court's reference to providing the right to counsel for indigents indicates that, in criminal cases, this court was aware that Rule 711 would impact the sixth amendment's right to counsel.[2]

A criminal defendant's constitutional right to counsel is multifaceted. On the one hand, it includes the right to competent counsel. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). On the other hand, it allows a defendant the ability to participate in and make decisions concerning his defense, including the right to waive counsel. *Faretta v. California*, 422 U.S. 806, 821, 45 L. Ed. 2d 562, 574, 95 S. Ct. 2525, 2534 (1975); see also *People v. Cox*, 12 Ill. 2d 265, 270 (1957) (acknowledging that under

---

[2] The rule itself provides that 711 students can only work in a "legal aid bureau, legal assistance program, organization, or clinic *** the office of the public defender; or *** a law office of the State or any its subdivisions." 210 Ill. 2d R. 711(b). While there are "law offices of the State" that serve in a prosecutorial capacity such as the Attorney General, the vast amount of offices that come under the rule's purview are those that give assistance to the poor. Private law firms cannot have students work for them in the same capacity.

-14-

both the federal and Illinois constitutions, "an accused may likewise waive his right to representation by one licensed to practice law"). This court has held that "counsel" for purposes of the sixth amendment is not a mere formality; it means that only those persons licensed under this court's rules to practice law will be permitted to defend a criminal defendant in our courtrooms. *Cox*, 12 Ill. 2d at 269. That counsel must be licensed is critical. In fact, the familiar two-pronged ineffective assistance of counsel standard announced in *Strickland* was predicated on the presumption that decisions made by an attorney, duly licensed and admitted to practice under state rules, are legitimate matters of trial strategy and thus are subject to highly deferential judicial scrutiny, free of the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

Rule 711 was designed, then, not only to ensure that the constitutional rights of those who receive student representation are protected, but also to avoid abuses by them. Relevant here is subsection (c), which provides the following:

"Under the supervision of a member of the bar of this State, *and with the written consent of the person on whose behalf he/she is acting, which shall be filed in the case and brought to the attention of the judge or presiding officer*, an eligible law student or graduate may render the following services:

\*\*\*

He/She may appear in the trial courts and administrative tribunals, subject to the following qualifications:

\*\*\*

(i) Appearances, pleadings, motions, and other documents to be filed with the court may be prepared by the student or graduate and may be signed by him with the accompanying designation 'Senior Law Student' or 'Law Graduate' but must also be signed by the supervising member of the bar.

(ii) In criminal cases, in which the penalty may be imprisonment, in proceedings challenging sentences of imprisonment, and in civil or criminal contempt proceedings, the student or graduate may participate in

-15-

pretrial, trial, and posttrial proceedings as an assistant of the supervising member of the bar, who shall be present and responsible for the conduct of the proceedings.

(iii) In all other civil and criminal cases the student or graduate may conduct all pretrial, trial, and posttrial proceedings, and the supervising member of the bar need not be present." (Emphasis added.) 210 Ill. 2d R. 711(c).

The plain language Rule 711 requires specifically that written consent be obtained and that it "shall" be filed in the case. The consent requirement of the rule, in conjunction with the presence of a supervising attorney, are the preconditions to the student's participation in the case. Without written consent, spread of record, and the presence of the supervising attorney, the student is unauthorized to practice law in Illinois courtrooms.

The consent portion of the rule ensures, particularly in criminal cases where the right to counsel is constitutionally guaranteed, that a litigant knows and agrees to the proposition that someone who is not licensed to practice law will be participating in the case on his behalf. Rule 711 allows the litigant a choice–he can agree to the student representation or refuse it. It is not forced on him. The consent portion of the rule therefore serves a purpose–its requirement that written consent be made a part of the record serves to safeguards against litigants, particularly criminal defendants, from later arguing on appeal that they did not know they were being represented by students or did not consent to such representation. The agreement of a criminal defendant that a law student, under the direct supervision of counsel, could discharge some or all of counsel's duties would constitute a partial waiver of the right to competent (licensed) counsel that is guaranteed by the sixth amendment. For that reason, I would hold that the violation of the consent portion of Rule 711 requires a new trial since the assistance of counsel is among those " 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' " *Holloway v. Arkansas*, 435 U.S. 475, 489, 55 L. Ed. 2d 426, 437, 98 S. Ct. 1173, 1181 (1978), quoting *Chapman v. California*, 386 U.S. 18, 23, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 827-28 (1967).

My position is not new. Prior to the appellate court's action here in *Smith*, that was the law in Illinois. For example, in *In re Moore*, 63

Ill. App. 3d 899 (1978), a new trial was ordered because the record failed to disclose any affirmative signal that either the respondent or the trial judge was aware of the law student's 711 status. The appellate court specifically emphasized that "[n]o written consent form by respondent appear[ed] in the record." *Moore*, 63 Ill. App. 3d at 904.[3] In *People v. Schlaiss*, 174 Ill. App. 3d 78 (1988), the court reversed the defendant's conviction because he had not consented to representation by a law student and there was insufficient evidence in the record to show that the defendant even knew he was being represented by a law student.

I note, too, that courts from other jurisdictions have also held that lack of consent is grounds for reversal. For example in *People v. Miller*, 89 Cal. App. 3d Supp. 14, 152 Cal. Rptr. 707 (1979), the California Court of Appeals ordered a new trial because the record contained no written consent from the defendant allowing a law student to discharge the duties that a licensed attorney would normally do during the trial. The court specifically noted that allowing a law student to take over various portions of the trial was, in effect, a partial waiver of the defendant's sixth amendment right to counsel. Similarly, in *In re C.B.*, 546 So. 2d 447 (Fla. App. 1989), the Florida Court of Appeals reversed based on the lack of direct evidence that the respondent had consented to the representation of student intern. Although the State argued that the intern had informed the respondent of her student status, the court found that to be "no substitute" for proof in writing of actual consent to the representation. *C.B.*, 546 So. 2d at 448. See also *In re L.S.*, 560 So. 2d 425 (Fla. App. 1990) (reversing based on lack of written consent without addressing whether the intern was supervised); *In re A.R.*, 554 So. 2d 640 (Fla. App. 1989) (reversing for lack of consent waiver without addressing the extent to which the intern had been supervised).

Not all cases, however, require *per se* reversals. Those cases which have not ordered new proceedings did so because evidence in the record established that the defendant was aware of the student's

---

[3] The court mischaracterizes *Moore* by implying that the appellate court's holding was grounded upon the lack of supervision by a licensed attorney. Slip op. at 11. The focus of the court's holding in *Moore* was on the lack of consent and the lack of knowledge on the part of the trial judge.

status. See *State v. Dwyer*, 181 Wis. 2d 826, 512 N.W.2d 233 (1994); *Jones v. State*, 902 P.2d 686 (Wyo. 1995). That is not the case here. In fact, my research indicates only one jurisdiction, Louisiana, which regards the absence of required consent as cavalierly as the court does here today. See *State v. Edwards*, 351 So. 2d 500 (La. 1977).

Like the court's pronouncements that its rules are not mere suggestions, the court is fond of saying that its rules are the equivalent of statutes and are to be interpreted as such. Slip op. at 7. That, of course, would mean that all of Rule 711's terms are to be given the effect of their plain, ordinary meaning. So, where is the meaning given to the words "written consent"? Surely, when this court promulgated the rule there was a purpose behind the words it used. Today's opinion omits any reference as to what that purpose may be. Instead, although the court finds that Rule 711 was violated in both cases by the failure to obtain the requisite written consent, that does not end its "inquiry." Slip op. at 8. It goes on to hold that even though law students–like those in these cases–who have not complied with the requirements of Rule 711 are "not counsel for constitutional purposes" (slip op. at 9), the right to counsel has not been denied because a supervising attorney is present. It is the presence of the supervising attorney, according to the court, that preserves the right to counsel under the sixth amendment.[4] I strongly disagree.

The presence of the supervising attorney has nothing to do with whether a litigant consented to have a student participate in his trial.

---

[4] In structuring its analysis, the majority relies in large part on *People v. Perez*, 24 Cal. 3d 133, 594 P.2d 1, 155 Cal. Rptr. 176 (1979). *Perez*, however, is distinguishable because the record in that case contained a written consent form that was signed by the defendant. Finding the consent form valid, the court placed on defendant the burden of establishing that his consent to such representation had been unknowing. Since the defendant could not meet that burden, the student's representation, in light of being supervised by licensed counsel, did not violate the defendant's right to counsel. Moreover, the court held that the defendant's written consent was sufficient to satisfy constitutional requirements. I note that the appellate court in *Schlaiss* specifically distinguished *Perez* on the basis that the California Supreme Court was not faced with the lack of written consent issue. *Schlaiss*, 174 Ill. App. 3d at 81.

In criminal cases, the presence of the supervising attorney has nothing to do with whether a defendant has agreed to waive his right to have a licensed attorney participate in all facets of his defense. Thus, the court has written out the consent provisions of Rule 711. Under today's analysis, a law student and the supervising licensed attorney could work in a case, and the defendant would have no say in the matter since a defendant does not have the right to choose one court-appointed attorney over another. Clearly, criminal defendants with monetary resources will not be put in this situation since Rule 711 applies only to law offices of the state and its subdivisions, such as the public defender's office, which supply appointed counsel. Those with money will retain and pay a fee to licensed member of the bar. Only the indigent, then, will face the prospect of having law students unwittingly thrust upon them through appointed counsel. This leads, in my view, to potential problems of inequality of representation based upon a defendants' economic status.

Turning to the consolidated matters here, in defendant Smith's case, the violation of the rule is clear. The record does not contain Smith's written consent to the student's representation, and the transcript does not indicate that the trial judge was made aware that a 711 student was participating in the suppression hearing. I would therefore grant Smith a new trial.

Respondent Denzel W.'s case is more problematic. By failing to address the consent portion of the rule, the court bypasses the more fundamental question of whether the rule even applies to juvenile proceedings. Rule 711 states that eligible students may participate in civil and criminal matters. The rule does not specifically refer to juvenile proceedings, which are neither criminal nor civil proceedings. See *In re W.C.*, 167 Ill. 2d 307, 326 (1995) (recognizing that a juvenile proceeding is "nonadversarial and designed to further the best interests of the minor").[5]

---

[5]I note that several of our sister states have specifically included juvenile proceedings in their student practice rules. See, *e.g.*, Colo. Rev. Stat. 12–5–116.1 (2009); Ga. Sup. Ct. R. 91 (2009); Idaho Bar Comm'n R. 221; Mass. Sup. Jud. Ct. R. 3:03 (2009); Neb. Ct. R. §3–702; Ohio Rules for the Government of the Bar R. II; Oklahoma Supreme Court R. 7.7; Or. Bar Admission R. 13.10 (2009); Washington Supreme Court R. 9.

Assuming Rule 711 does apply to juvenile proceedings, this court has incorporated many of the constitutional requirements of a criminal trial into juvenile delinquency proceedings, including the right to counsel. *In re A.G.*, 195 Ill. 2d 313, 319 (2001). The right to counsel, as I have previously explained, includes the right to waive attorney representation. Rule 711 states that consent to the student representation must be obtained from the party on whose behalf the student will act. How should the consent contemplated in Rule 711 be given in juvenile proceedings? A juvenile may not understand the implications of having a law student take on some advocate roles in the trial; therefore, it would seem that the juvenile's parent or guardian would need to be the one to give the requisite consent under the rule. Again, however, because the court summarily renders the consent portion Rule 711 mere surplusage, it dodges the questions surrounding whether a juvenile can even give the consent that Rule 711 would require if it is indeed applicable to juvenile proceedings. In any event, no written consent appears in the record, signed by either the respondent or his parents, and reversal would be required on that basis if the rule is applicable in such proceedings.

Parenthetically, the court's treatment of the juvenile case warrants criticism for a further reason. The court states that the appellate court is to determine whether the "trial court's actions *** resulted in respondent's receiving ineffective assistance of counsel." Slip op. at 12. I am not sure what that means–Does the appellate court have to see if the trial court's action violated *Strickland*? If so, how? By not allowing the supervising attorney to take over the redirect examination of Tequila, the trial court effectively denied respondent the benefit of the supervising attorney's expertise, a benefit that Rule 711 clearly contemplates will not be denied even though a student may be assisting in the case. By not letting the supervising attorney actually "supervise" the student, the trial court violated Rule 711 and denied respondent his right to competent, licensed counsel during the trial proceedings. Neither the respondent nor his licensed attorney violated Rule 711 so the burden of establishing a *Strickland* violation should not be placed upon him on appeal. There is no reason for a remand under such circumstances.

Finally, I take issue with two other aspects of the court's decision today. First, there is the court's references to the supervising attorney

as a kind of filter that prevents the 711 student from making mistakes. It is not always possible to glean from the transcripts the extent to which a supervising attorney can control the student's words and actions. The transcript in the juvenile case reflects that even when a supervising attorney wants to take control, he might not be able to do so. More importantly, the immediate presence of an experienced, supervising attorney cannot always prevent or undue the harm caused by the unskilled student assistant, such as failing to lay the proper foundation for impeachment, asking an overbroad question on cross-examination, or clumsily handling the direct examination of a hostile or difficult witness. Applying the *Strickland* standard, with its strong presumption in favor of competence, will not always provide relief in such circumstances. As the dissenting justice in *Perez* noted, there "may be but one moment of time in the course of a trial when the right act, word or decision can be made and the case won. *** If that moment of opportunity passes, no amount of post-verdict advice to or critique of the law student's performance will give solace to a defendant in prison." *Perez*, 24 Cal. 3d at 151, 594 P.2d at 12, 155 Cal. Rptr. at 187 (Mosk, J., dissenting).

Second, there is the court's references to the educational worth of Rule 711 for law students. Slip op. at 7, 12. I understand this worth, but it has absolutely no bearing on this case. The only relevant inquiry is whether Smith and Denzel consented to the student's representation, not what educational opportunity is offered by that representation.

JUSTICE BURKE joins in this dissent.