2022 IL App (1st) 210946-U

No. 1-21-0946

Order filed October 18, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ADRIENNE C. BARRON, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | Charge No. 2020 CF 810 |
| FORD MOTOR COMPANY, ILLINOIS DEPARTMENT | ) | |
| OF HUMAN RIGHTS, and ILLINOIS DEPARTMENT | ) | |
| HUMAN RIGHTS COMMISSION, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Illinois Human Rights Commission's order sustaining the Illinois Department
of Human Rights' dismissal of petitioner's charge of sex-based discrimination for
lack of substantial evidence is affirmed.

¶ 2     On direct administrative review, petitioner Adrienne C. Barron appeals *pro se* from a final decision entered by the Illinois Human Rights Commission[1] (Commission) sustaining the Illinois Department of Human Rights' (Department) dismissal of her charge of discrimination based on her sex against respondent Ford Motor Company (Ford) pursuant to the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2018)).[2] For the reasons that follow, we affirm.

¶ 3     On October 18, 2010, Ford hired petitioner as a supplemental employee. In 2011, petitioner became a full-time employee. On November 4, 2019, petitioner filed with the Department the instant charge of discrimination against Ford, charging it discharged her due to her sex (female).

¶ 4     The Department conducted an investigation of petitioner's charge of discrimination. The Department's investigator interviewed petitioner and Heather Lange, Ford's labor relations representative.[3] Although Lori Edison was listed on the "witness list," the Department was unable to contact her despite multiple attempts. Exhibits included Ford's "Anti-Harassment Directive B-110" (anti-harassment policy) and discipline and discharge policy. In an investigation report dated October 13, 2020, the investigator recommended the dismissal of petitioner's charge based on a lack of substantial evidence. The report recounted as an uncontested fact that Ford hired petitioner on October 18, 2010, and discharged her on May 8, 2019. In the report, the investigator detailed the evidence submitted by both parties during the investigation, which we summarize below.

---

[1] Petitioner incorrectly lists "Illinois Department Human Rights Commission" as an appellee on her petition for review. We correctly identify that entity as the Illinois Human Rights Commission here.

[2] Petitioner also has several other pending appeals (case nos. 1-21-0451, 1-21-1629, 1-21-1630, and 1-22-0480) in this court related to separate charges of discrimination.

[3] Lange's last name is interchangeably spelled as "Lang" and "Lange" throughout the record. We adopt the spelling most consistently used by the Department and Commission.

¶ 5    Petitioner reported to the investigator that on February 13, 2019, an employee was handing out candy for Valentine's Day, and petitioner received a ring pop. Her coworker, Jerome Smith, told petitioner, " '[D]amn girl, the way you are biting on that sucker make me c*** all over myself.' " Petitioner told Smith she "did not appreciate the comment," but she did not say anything else and walked away. On February 14, 2019, Smith asked petitioner to get "pens" for him. When petitioner said she could not do the task, Smith got "aggressive" and called petitioner "lazy," a "d***e a*** b***," and "other profane names." Petitioner "cussed at him in defense" and "threatened to tell her husband the things Smith was saying." On February 18, 2019, petitioner returned to work and noticed Smith's friends at work were ignoring her and "whispering about her behind her back."

¶ 6    Petitioner was called into a meeting with Lange later that day. Lange asked petitioner what happened on February 14, 2019, and listed several allegations against petitioner made by other employees. Petitioner responded that Smith's friends were making "false complaints" against her because of her argument with Smith. Petitioner denied being inappropriate with a coworker. Petitioner was "sent home" because "she could not work while they did an investigation on what had happened."

¶ 7    Petitioner also informed the Department's investigator that during the internal investigation, she called Ford's harassment hotline about 10 times, from February 25, 2019, through April 2019. She reported to Ford "similar conduct" by Smith and two other male employees, Yamile Macklin and Billie Johnson. On May 8, 2019, Lange informed petitioner she was discharged effective immediately for "gross misconduct and sexual harassment."

¶ 8    Petitioner told the Department's investigator she "felt discriminated against due to her sex" because Lange did not listen to her, refused to interview the witnesses identified by petitioner, and "sided *** with" and supported Smith "because he was male." Petitioner claimed that while she had reported Smith, Macklin, and Johnson for misconduct to Ford's harassment hotline, none of them were discharged permanently. Macklin and Johnson were discharged temporarily but rehired shortly after petitioner's discharge. Petitioner claimed she was never given the option for reemployment.

¶ 9    Petitioner acknowledged that Ford had an anti-harassment and anti-discrimination policy, which prohibited harassment and discrimination. She recognized that under Ford's discipline policy, an employee could be terminated for not following the policy.

¶ 10    Lange informed the investigator that Ford has a zero-tolerance policy that prohibits all harassment, including sexual and sex-based harassment. Smith had attempted to make a complaint against petitioner on February 14, 2019, but was told to make the complaint after the weekend. On Monday, February 18, 2019, Smith filed a complaint with Lange. He alleged that at the end of the day on February 14, an argument broke out between him and petitioner. Petitioner "had used profanity, racial slurs, had threatened him, grabbed her crotch, displayed gang signs, and followed him off the floor up to the Mezzanine, where he tried to go file his complaint." Lange called another employee to her office, who confirmed Smith's allegations. She then called petitioner into her office to get "her side of the story." After hearing her story, Lange told petitioner an investigation would need to be conducted, and petitioner would not be allowed back at work during that time.

¶ 11    Lange worked with a team to investigate the incident, and 14 Ford employees were interviewed. During the interviews, more allegations were made against petitioner, and witnesses

to the new allegations were also interviewed. The investigation also included six allegations made by petitioner to the harassment hotline against Smith and two other employees.

¶ 12    At the end of Ford's investigation, it was determined that "multiple witnesses could confirm multiple incidents of misconduct" by petitioner, and "at least four allegations" against petitioner were confirmed. Ford's investigation "establish[ed] a pattern of behavior from [petitioner] that included a mix of threats, racial slurs, and sexual harassment." Petitioner's allegations against Smith were investigated but could not be confirmed, but Smith was coached and counseled regarding Ford's anti-harassment policy and "reminded to uphold a professional manner in the workplace." However, petitioner's allegations against Macklin and Johnson were proven, and both employees were terminated for misconduct and never rehired.

¶ 13    Petitioner was terminated effective May 8, 2019, based on "all the allegations" against her and "confirmation of the misconduct." Petitioner's disciplinary action report indicated she was discharged for threatening employees and violating Ford's anti-harassment policy. Of the six employees discharged for violating the anti-harassment policy from February 2018 through May 2019, four were male.

¶ 14    In rebuttal, petitioner told the Department's investigator that Ford interviewed 14 people during its own investigation, but none of "her" witnesses.

¶ 15    The Department's investigator concluded the evidence did not show Ford discriminated against petitioner based on her sex. Rather, Ford discharged petitioner for "gross misconduct" and violating its anti-harassment policy, and the discharge was consistent with Ford's policy. Although petitioner had identified Macklin and Johnson as two male employees treated more favorably under similar circumstances, the Department's investigation had revealed that both employees had

been discharged and were never rehired. The investigation also revealed that, from February 2018 to May 2019, Ford had discharged four male employees for violating the same policy that petitioner was discharged for violating. The investigator determined that petitioner had not provided evidence of a discriminatory pretext nor was there evidence of an "animus based on sex." The investigator therefore recommended a finding of lack of substantial evidence.

¶ 16    On November 10, 2020, the Department dismissed petitioner's charge of discrimination for lack of substantial evidence.

¶ 17    On February 19, 2021, petitioner filed a request for review with the Commission. She argued that her charge should not have been dismissed because a "bystander" named Edison, was not "taken into account." She claimed that Edison was "retaliated for [*sic*] telling the truth for [her]." She asserted there was " 'no' mention" of the witnesses she had identified, who could have confirmed her statement that she never made a sexual comment or threatened Smith. She also claimed that a number of Ford employees entered into a "conspiracy" to file false complaints against petitioner to prevent her from engaging in a protected activity, and Lange knew the complaint was false.

¶ 18    On March 22, 2021, the Department filed a response to petitioner's request for review, reiterating the findings made in its report.

¶ 19    On August 3, 2021, the Commission issued its final order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence. The Commission found that petitioner failed to establish a *prima facie* case of sex-based discrimination. It reasoned that petitioner did not identify similarly situated, male employees who were not discharged under similar circumstances. While petitioner disputed Ford's conclusion that she had engaged in

misconduct, the Commission stated its role was "only to ascertain whether discrimination occurred," and not "to review the correctness of [Ford's] investigation and conclusion." Petitioner timely sought direct review of the Commission's final determination with this court.

¶ 20    As an initial matter, we note petitioner's *pro se* brief on appeal fails to comply with the requirements of Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). For example, petitioner's brief fails to: (1) demonstrate this court's jurisdiction; (2) reference the facts of the case without argument or comment; (3) include specific page citations to the record on appeal; and (4) set forth a clear legal argument supported by citation to pertinent legal authorities. *Id.* Illinois Supreme Court rules have the force of law and must be followed. *In re Denzel W.*, 237 Ill. 2d 285, 294 (2010). In fact, the brief appears to consist of pages taken from several different documents, some of which appear to be screenshots of text messages and portions of the record. Most of the 60 pages in petitioner's opening brief do not logically follow from their preceding pages. Nonetheless, each page includes a handwritten page number at the bottom, confirming that the pages of the brief before us are attached in their intended order.

¶ 21    This court will not apply a more lenient standard for *pro se* litigants. *People v. Fowler*, 222 Ill. App. 3d 157, 163 (1991); see *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 528 (2001) ("*Pro se* litigants are presumed to have full knowledge of applicable court rules and procedures."). Where a party fails to comply with Rule 341, this court may, in our discretion, strike the brief and dismiss the appeal. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. Here, we see no impediment to resolving this appeal notwithstanding the shortcomings of petitioner's brief, as the record is not voluminous and we have the benefit of a cogent appellee's brief. See *Twardowski v. Holiday*

*Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). Accordingly, we choose to address the merits of this appeal.

¶ 22     On appeal, petitioner challenges the Commission's decision to sustain the Department's dismissal of her discrimination charge.

¶ 23     Under the Act, the Department conducts an investigation and may dismiss a charge upon a determination that there is no "substantial evidence" supporting the charge.[4] 775 ILCS 5/7A-102(C), (D)(3) (West 2018). The Act defines "substantial evidence" as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. 775 ILCS 5/7A-102(D)(2) (West 2018). A petitioner may seek review of the Department's dismissal of the charge by either commencing a civil action in the circuit court or, as petitioner did here, filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2018). Where the Commission sustains the dismissal, the petitioner may seek direct appellate review of the Commission's final determination. 735 ILCS 5/3-113(a) (West 2018).

¶ 24     On direct appellate review, this court is "empowered to review any and all questions of law or fact presented by the record." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 41 (2000). We review the Commission's decision to sustain the Department's dismissal of a charge for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under the abuse of discretion standard, we will not reverse the Commission's

---

[4] We note that several sections of the Act have been amended after petitioner filed her complaint, none of which are material to our analysis of this appeal. Illinois Public Act 101-221 (eff. Jan. 1, 2020); Illinois Public Act 102-558 (eff. Aug. 20, 2021). Accordingly, we rely on the version of the Act in effect as of November 2019, when petitioner filed her charge.

decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id. ¶* 33.

¶ 25    As relevant here, the Act prohibits an employer from discharging or disciplining an employee based on unlawful discrimination and any such act constitutes a civil rights violation. 775 ILCS 5/2-102(A) (West 2018). "Unlawful discrimination" includes "discrimination against a person because of his or her actual or perceived *** sex." 775 ILCS 5/1-103(Q) (West 2018).

¶ 26    The employee bears the burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. More specifically, the employee must show that "(1) she is a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated others similarly-situated outside the class more favorably." *Id.* Once a *prima facie* case is established, "a rebuttable presumption arises that the employer unlawfully discriminated against" the petitioner, and the employer must rebut the presumption by articulating "a legitimate, nondiscriminatory reason for its decision." *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989). If the employer carries its burden, the presumption of unlawful discrimination fails and the petitioner must prove "by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination." *Id.*

¶ 27    In this case, the Commission's decision sustaining the dismissal of petitioner's charge of discrimination for "lack of substantial evidence" was not an abuse of discretion. The Commission properly concluded that petitioner failed to establish a *prima facie* case that she was unlawfully

discharged based on her sex, where the evidence did not show that Ford treated similarly situated, male employees any more favorably. Rather, the evidence demonstrated that Ford terminated petitioner's employment after it confirmed with multiple employees that petitioner had violated Ford's anti-harassment policy on multiple occasions. Ford had a zero-tolerance policy for such violations, and petitioner acknowledged an employee could be discharged for not following the policy. Of the six employees Ford discharged from February 2018 through May 2019 for violating the same harassment policy as petitioner, four were male.

¶ 28     Petitioner claimed that Ford had treated two male employees, Macklin and Johnson, more favorably after harassment allegations against them were likewise confirmed. According to petitioner, Ford temporarily discharged Macklin and Johnson, but subsequently rehired them. However, similar to petitioner, Ford discharged and never rehired Macklin or Johnson after confirming the harassment allegations against them. Although petitioner asserts that Smith was not discharged following the incident involving her, Smith was not "similarly situated" because Ford's internal investigation determined that he had not engaged in misconduct that warranted termination. In sum, the evidence did not show that petitioner was treated less favorably than similarly situated, male employees or that she was discharged based on her sex. Accordingly, the Commission properly sustained the dismissal of petitioner's retaliation charge based on her failure to establish a *prima facie* case of discrimination. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 29     We note that in her opening and reply briefs, petitioner raises several new factual allegations not contained in the record. However, under the Administrative Review Law, this court is precluded from considering new or additional evidence that was not raised before the Commission. 735 ILCS 5/3-110 (West 2020) ("No new or additional evidence in support of or in

opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court."). Therefore, we cannot consider any new allegations regarding Smith's conduct that petitioner failed to previously raise.

¶ 30 For the foregoing reasons, we affirm the decision of the Commission sustaining the Department's dismissal of petitioner's charge of discrimination.

¶ 31 Affirmed.